[No. A115652. First Dist., Div. Two. June 5, 2008.]

CARSON CURCINI et al., Plaintiffs and Appellants, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

630

COUNSEL

Mosley & Gearinger and Stephen F. Henry for Plaintiffs and Appellants.

Boornazian, Jensen & Garthe, Gregory J. Rockwell and Jill P. Sazama for Defendants and Respondents.

OPINION

KLINE, P. J.—

## INTRODUCTION

Appellants, former chaplains at Santa Rita Jail in Alameda County and an entity incorporated by them,[1] appeal from the judgment of the Alameda

---

[1] Appellants are Carson Curcini, Kinwood Devore, Johnny Jones and Community Chaplains, Inc. A fifth plaintiff, Linda Buehling, voluntarily dismissed her claims against respondents after

County Superior Court entered against them and in favor of respondents County of Alameda, and five Alameda County Sheriff's Office employees. The judgment followed the sustaining of demurrers to appellants' causes of action for alleged violations of state laws regarding wage and hour requirements covering overtime, meal breaks and rest breaks, as well as to three fraud causes of action (intentional misrepresentation, concealment, and false promise). Appellants contend the trial court erred in granting respondents' demurrers to these causes of action.

Specifically, appellants contend the trial court erred in ruling that Labor Code sections 510,[2] 512, 226.7 and 1194 do not apply to charter counties such as the County of Alameda in the circumstances presented. Appellants also contend the court erred in sustaining the demurrer as to their fraud causes of action, arguing that the complaint sufficiently alleges the requisite corruption and malice to overcome the qualified immunity provided by Government Code section 822.2. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*Allegations of the Complaints*[3]

As alleged in the complaints, appellants Curcini, Devore and Jones (chaplains) are chaplains who worked at the Santa Rita Jail.[4] Appellant Community Chaplains, Inc., is a corporation that the individual appellants formed in August 2004, at the encouragement of certain members of the

---

the demurrer to the first amended complaint was sustained. "Respondents" refers collectively to the County of Alameda and to county sheriff's office employees Richard Bond, Robert E. Eilers, Steven J. Roderick, Jerry C. Maldonado and Daniel Harrison.

[2] Appellants never mentioned a cause of action under Labor Code section 510 in any of their amended complaints. Rather, they alleged a failure to pay overtime in violation of Labor Code section 1194 in their first amended complaint. They argued in their opposition to the demurrer that Labor Code section 510 applies and they sought leave to amend their causes of action to "specify additional Labor Code provisions under which they are entitled to overtime and meal periods and to correct the citations to the Labor Code provisions under which they seek remedies for violations of the overtime and meal period provisions."

[3] On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, we assume the truth of all properly pleaded facts. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2007) ¶ 8:136, p. 8-83.) We also accept as true all facts that may be implied or inferred from those expressly alleged. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 8:136, p. 8-83.)

[4] Curcini and Jones worked for the County of Alameda from February 2002 through March 2005, and Devore worked for the county from 1997 through January 2005.

county sheriff's office. Appellant chaplains alleged they were employees of the County of Alameda who were entitled to, but did not receive, overtime pay, meal breaks or rest breaks. They were "not paid overtime for any [of their] work in excess of eight hours a day and/or 40 hours per week," nor were they "compensated for the one-half hour of work or for the break periods, despite the fact that [they were] required to work through them."

Beginning in early 2004, respondent sheriff's office employees recognized that there was a shortfall in excess of $2 million in the Inmate Welfare Fund, because of mismanagement and misuse of the funds by respondent employees and others. Respondents sought to find areas where inmate services could be cut to offset this deficit. One substantial area of savings was the $500,000 budget for the chaplain services program.

In early 2004, certain members of the county sheriff's office began advising the chaplains and others that the sheriff's office was going to privatize the provision of religious services for the adult inmate population in the County of Alameda facilities and select the provider through a public bidding process. They began encouraging the chaplains to set up their own private entity in order to be able to bid on the provision of religious services. As a result of this encouragement, the chaplains and others incorporated appellant Community Chaplains as a California corporation.

During this time, respondents knew they could save a significant amount of money by bringing in Good News Jail & Prison Ministry[5] (Good News), a low-cost private contract chaplaincy service, but also knew that Good News was unprepared to bid for the program and/or to take over the chaplain services program in accordance with the terms of the requirements set forth by respondents. Therefore, respondents developed a scheme to keep the chaplains on the job, while waiting for Good News to prepare a bid. Respondents always intended to accept the bid of Good News, regardless of that entity's qualifications or lack thereof. Because that entity was not prepared to take over the chaplain services program in accordance with the terms and requirements of the county sheriff's office, respondents schemed to encourage the chaplains to go to work for Good News and, if they refused to work for Good News, respondents determined to fire them. (Appellants also alleged, somewhat inconsistently, that in early 2004 respondent "Sheriff's Office Employees also wanted to prevent [chaplain Devore and another chaplain] from continuing to serve as chaplains at the Santa Rita County Jail as part of Community Chaplains or as employees of Good News . . . once

---

[5] "Good News Jail & Prison Ministry" is sometimes referred to by the parties as "Good News Jail and Prison Ministries."

Good News . . . took over the Chaplain Services program in accordance with [respondent] Sheriff's Office employees' scheme.")

In August and September 2004, the county sheriff's office issued a request for interest (RFI) and a request for proposal (RFP) for inmate chaplain services for the Sheriff's Office, stating the intent to award a three-year contract with an option to renew to the most qualified responsible bidder meeting the county sheriff's office requirements. On October 7, 2004, Community Chaplains submitted a proposal in response and subsequently made a presentation to the sheriff's selection committee. The county sheriff's office informed appellants that it was awarding the contract to Good News. On January 6, 2005, appellant Community Chaplains filed a formal protest and appeal of the recommendation. Respondent Eilers of the county sheriff's office responded on January 12, 2005, stating there was no favoritism in the bid selection process and that the award to Good News "stands." Nevertheless, the county sheriff's office continued to consider and review the bids submitted by Community Chaplains and Good News. On April 19, 2005, respondent Commander Bond wrote a letter to the chaplains informing them that during the course of a second-level review of the appeal to protest the decision, "it was determined that all bids received for this service were not in compliance with all requirements. As such, the Alameda County Sheriff's Office will reject all bids and will not award a contract. We have reevaluated our needs and do not anticipate rebidding this project in the near future." Ultimately, the contract was not awarded. Appellants did not allege they were ever fired.

Appellants alleged in their cause of action for "deceit—intentional misrepresentation" that respondent sheriff's office employees represented important facts to appellants such as if appellants responded to the RFP issued by the county sheriff's office, then respondents would equally and fairly evaluate the proposal under the terms of the RFP. These representations were false; respondents knew they were false when made; and they made these false statements for corrupt purposes and/or with malice to cause injury to appellants; and such conduct was despicable conduct and was carried on by respondents with a willful and conscious disregard of appellants' rights. Similar allegations were made with respect to the causes of action for "deceit—concealment" and for "deceit—false promise."

*Procedural History*

Appellants filed their initial complaint on June 17, 2005, and a first amended complaint on September 22, 2005. The first amended complaint

alleged nine causes of action. The first three causes of action, against the County of Alameda only, were for violations of Labor Code sections 1194, 226.7 and 203, for the alleged failure to pay overtime, failure to provide rest and meal breaks, and for related penalties. The next four causes of action were against all respondents for various types of fraud and misrepresentation. The last two causes of action were for defamation, and are not here relevant.

Respondents demurred to the first amended complaint on October 21, 2005, arguing that the Labor Code sections did not apply to the County of Alameda in part because it is a charter county. Respondents also argued that the fraud and misrepresentation claims were barred by immunities granted under Government Code sections 818.8 and 822.2. On November 21, 2005, the superior court sustained the demurrer without leave to amend as to the first and third causes of action (which were against the county only) for failure to pay overtime (Lab. Code, §§ 1194, 203); as to the fourth, fifth, and sixth causes of action as to the county only, for intentional misrepresentation and concealment and false promise, appellants having conceded the county could not be held liable on these claims; and the seventh cause of action for negligent misrepresentation as to all parties. The court sustained the demurrers as to the remaining causes of action, but granted leave to amend.

On December 12, 2005, appellants filed a second amended complaint containing six causes of action: A cause of action under Labor Code section 512 against the County of Alameda for failure to provide meal and rest periods; three causes of action for fraud-related claims including claims against respondent county sheriff's office employees for misrepresentation, concealment and false promise, and against the County of Alameda for false promise; and two defamation claims.

Respondents again demurred. On January 30, 2006, the superior court sustained in part and overruled in part the demurrer to the second amended complaint. It sustained the demurrer to the first cause of action under Labor Code section 512 without leave to amend. It sustained the demurrer to the fraud claims against respondent county sheriff's office employees with leave to amend. It overruled the demurrer to the two defamation claims.

On February 14, 2006, appellants filed their third amended complaint. It alleged five causes of action: three fraud-based causes of action against the county sheriff's office employees for intentional misrepresentation, concealment and false promise, and two defamation claims.

Respondents demurred to the three fraud-based causes of action. Respondents again argued that they were immune from these claims. On April 10,

2006, the trial court sustained the demurrer to the fraud-based claims without leave to amend.

Respondents then answered the remaining defamation claims.

On May 8, 2006, appellants voluntarily dismissed the defamation causes of action with prejudice. On July 20, 2006, judgment was entered in favor of respondents. This timely appeal followed.

## DISCUSSION

### I.  The Standard of Review

"Orders granting judgment on the pleadings or sustaining a demurrer are reviewed in this court de novo. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720] [judgment on the pleadings]; *Filet Menu, Inc. v. Cheng* (1999) 71 Cal.App.4th 1276, 1279 [84 Cal.Rptr.2d 384] [demurrer].) ' "Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. [Citation] . . . Appellate courts first review the complaint de novo to determine whether or not the . . . complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151], fn. omitted.) [¶] "Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action. [Citation.]" [Citation.]' (*Filet Menu, Inc. v. Cheng,* pp. 1279–1280.) Because appellants stand on the complaint as alleged and propose no amendments, the only question for us is whether the allegations of the complaint state any legally sufficient claims.

"We do not review the reasons for the trial court's ruling; if it is correct on any theory, even one not mentioned by the court, and even if the court made its ruling for the wrong reason, it will be affirmed. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329–330 [48 P. 117]; see also *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473]; *Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1 [119

Cal.Rptr.2d 606].)" (*Coastside Fishing Club v. California Resources Agency* (2008) 158 Cal.App.4th 1183, 1190–1191 [71 Cal.Rptr.3d 87].)

## II. Labor Code Claims[6]

Appellants contend the trial court erred in determining that the Labor Code sections pertaining to overtime and meal breaks and rest breaks could not be applied to employees of the County of Alameda. Labor Code sections 510, subdivision (a), and 1194 address overtime compensation and minimum wage.[7] Labor Code section 512, subdivision (a) addresses meal periods.[8]

---

[6] At no point have appellants sought to enforce any rights under the Alameda County Charter or ordinances. Nor have they asserted rights to overtime and meal/rest compensation in an action under the federal Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.). The remedies available under the FLSA are exclusive. Having chosen not to bring an action under the FLSA, appellants "cannot circumvent the FLSA through the state Labor Code." (*Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 168 [95 Cal.Rptr.2d 10] (*Kim v. Regents*).)

[7] Labor Code section 510 provides in relevant part: "(a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. The requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to any of the following:

"(1) An alternative workweek schedule adopted pursuant to Section 511.

"(2) An alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514.

"(3) An alternative workweek schedule to which this chapter is inapplicable pursuant to Section 554."

Labor Code section 1194 provides in relevant part: "(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

[8] Labor Code section 512 provides in relevant part: "(a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

Labor Code section 226.7[9] contains a "premium wage intended to compensate employees" for the failure to provide meal and rest periods. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1114 [56 Cal.Rptr.3d 880, 155 P.3d 284] (*Murphy*).)[10]

The trial court took judicial notice of the fact that the County of Alameda is a charter county. That fact is undisputed on appeal.

Respondents contend that charter counties have exclusive power under the California Constitution to determine the *compensation* of their employees (see Cal. Const., art. XI, § 1, subd. (b); *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 284–285 [132 Cal.Rptr.2d 713, 66 P.3d 718] (*County of Riverside*)), and that the county has exercised that power through its charter, ordinances, regulations, and agreements addressing matters such as overtime, and meal and rest periods for its employees. Appellants counter that there is a substantive difference between setting employee *compensation* and regulating the *working conditions* of employees. Appellants argue that requiring overtime compensation for hours worked in excess of eight hours per day and premium pay for denial of meal breaks or rest periods is not an issue of compensation, but of working conditions subject to the relevant provisions of the Labor Code.

Respondents assert that the question turns on whether the issues of overtime pay, meal and rest breaks, and payment for denying meal and rest breaks, address matters of "compensation" within the county's exclusive constitutional purview pursuant to the California Constitution, article XI, section 1, subdivision (b). Appellants appear to agree this is the critical question, but further argue that, even if these matters (excess work hours, overtime, or meal and rest break regulations) relate to compensation, they are

---

[9] Labor Code section 226.7 provides as follows: "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

"(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

[10] Respondents had argued below, and the superior court agreed, that Labor Code section 226.7 was a "penalty" on employers who denied employees meal and rest breaks and that the County of Alameda was immune from such claim pursuant to Government Code section 818, immunizing a public entity from paying for amounts imposed "primarily for the sake of example and by way of punishing the defendant." (Gov. Code, § 818.) Recently, the California Supreme Court held in *Murphy, supra*, 40 Cal.4th at page 1094, that for purposes of the statute of limitations, the additional hour of pay awarded pursuant to section 226.7 "is a premium wage intended to compensate employees, not a penalty." (*Murphy*, at p. 1114.) Respondents do not here readvance their argument that Government Code section 818 immunizes the County of Alameda from Labor Code section 226.7 claims.

subjects of statewide concern as to which the charter is silent and that the charter provides no mechanism by which employees could pursue remedies. Consequently, appellants maintain that the Labor Code sections at issue here apply to fill the void.

### A. *California Constitution, article XI, section 1—delegation of power over compensation*

■ "When a California county adopts a charter, its provisions 'are the law of the State and have the force and effect of legislative enactments.' (Cal. Const., art XI, § 3, subd. (a); see *id.,* §§ 1, subds. (a), (b), 4.) Under the 'home rule' doctrine, county charter provisions *concerning the operation of the county,* and specifically including the county's right to provide 'for the number, compensation, tenure, and appointment of employees' (that is, a county's core operations) trump conflicting state laws. (Cal. Const., art. XI, § 1, subd. (b); [citation]; see *County of Riverside*[, *supra,*] 30 Cal.4th 278, 285 . . . [the 'constitutional' language is quite clear and quite specific: the *county,* not the state, not someone else, shall provide for the compensation of its employees . . .']; [citations].)" (*Holmgren v. County of Los Angeles* (2008) 159 Cal.App.4th 593, 601 [71 Cal.Rptr.3d 611] [county has plenary authority to determine who is a civil servant and who is not, as terms of civil service employment are governed by county charter].)

■ Among the powers specifically delegated to charter counties is control over matters of employee compensation. Section 4 of article XI sets forth the areas that the charter county "shall provide for." Included therein are: "The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, *and other persons to be employed, and for the prescribing and regulating by such bodies of the* powers, duties, qualifications, and *compensation of such persons,* the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal." (Cal. Const., art. XI, § 4, subd. (f), italics added.)

■ In *County of Riverside, supra,* 30 Cal.4th 278, the California Supreme Court held that legislation requiring counties and other local agencies to submit, under certain circumstances, to binding arbitration of economic issues arising during negotiations with unions representing firefighters or law enforcement officers violated article XI, section 1, subdivision (b) of the California Constitution, which provides that a county's governing body shall provide for the compensation of its employees. (*County of Riverside,* at p. 282.) The court addressed the constitutional grant of authority to all counties (not just charter counties) by article XI, section 1, subdivision (b), as follows: "Section 1, subdivision (b), provides as relevant: 'The governing body [of each county] shall provide for the number, compensation, tenure,

and appointment of employees.' . . . The constitutional language is quite clear and quite specific: the *county*, not the state, not someone else, shall provide for the compensation of its employees. Although the language does not expressly limit the power of the Legislature, it does so by 'necessary implication.' [Citation.] An express grant of authority to the county necessarily implies the Legislature does not have that authority." (*County of Riverside*, at p. 285, fn. omitted.)

The Supreme Court also has recognized that charter counties have the right to determine the compensation of their employees and "that 'the determination of the wages paid to employees of charter cities as well as charter counties is a matter of local rather than statewide concern.' (*Sonoma County Organization of Public Employees v. County of Sonoma* [(1979)] 23 Cal.3d [296], 317 [152 Cal.Rptr. 903, 591 P.2d 1].)" (*County of Riverside, supra*, 30 Cal.4th at p. 288.) Accordingly, the Supreme Court has found unconstitutional a statute "prohibit[ing] the distribution of certain state funds to local public agencies that granted their employees cost-of-living increases, despite a legislative declaration that the statute was a matter of statewide concern. ([*Sonoma County*], at pp. 302, 316.) For similar reasons, and despite a similar legislative declaration, [the court] later invalidated legislation requiring the University of California to pay its employees at least prevailing wages. (*San Francisco Labor Council v. Regents of University of California* [(1980)] 26 Cal.3d [785,] 789–791 [163 Cal.Rptr. 460, 608 P.2d 277]." (*County of Riverside*, at p. 288.)

*San Francisco Labor Council v. Regents of University of California, supra*, 26 Cal.3d 785 (*San Francisco Labor Council*) rejected the argument that *Sonoma County Organization of Public Employees v. County of Sonoma, supra*, 23 Cal.3d 296 (*Sonoma County*) was distinguishable because it involved chartered cities and counties and not the University of California, observing that "the *Sonoma* decision was based . . . on constitutional power in local authority, to the exclusion of legislative interference. As we have seen, article IX, section 9, establishing the independence of the university also curtails legislative power. Salary determination is as important to the autonomy of the university as it is to the independence of chartered cities and counties." (*San Francisco Labor Council*, at p. 791.)

Appellants contend that the Labor Code sections here address issues of working conditions and not compensation. We disagree.[11]

---

[11] Initially, we note that neither Labor Code section 510, subdivision (a) specifying a day's work and establishing a rate of overtime pay, nor section 512 providing meal periods, is set forth in a chapter of the Labor Code entitled "Working Conditions" as appellants maintain. Rather, these sections are set forth in part 2 ("Working *Hours*" [italics added]) of division 2 ("Employment Regulation and Supervision") of the Labor Code. (44 West's Ann. Lab. Code

### B. Overtime claims under Labor Code sections 510 and 1194

In *Kim v. Regents, supra,* 80 Cal.App.4th 160, Division Four of this district upheld the trial court's sustaining of the university's demurrers without leave to amend as to the plaintiff's causes of action, including a cause of action for overtime under Labor Code section 1194. Kim claimed that she was a public employee, but that she was not employed directly by the state within the meaning of the wage order provisions stating they did not apply to persons directly employed by the state.[12] The court held that the "Regents are nonetheless exempt from its mandate by virtue of their constitutional status." (80 Cal.App.4th at p. 166.)

Relying upon *San Francisco Labor Council, supra,* 26 Cal.3d 785, 789, and *Regents of University of California v. Aubry* (1996) 42 Cal.App.4th 579 [49 Cal.Rptr.2d 703] (*Aubry*), the court recognized that the Regents could not be compelled to comply with prevailing wage requirements of the Education Code or of the Labor Code. (*Kim v. Regents, supra,* 80 Cal.App.4th at pp. 166–167.) The court applied the "logic" of those prevailing wage cases to Kim's state overtime claim, stating: "Like *Aubry* and [*San Francisco*] *Labor Council,* the issue here pertains to the determination of the amount of wages to be paid to individual employees. *Aubrey* held that the prevailing wage law was not such a matter of statewide concern as to outweigh the ability of the university to pay lower wages to advance its educational objectives. (*Aubry, supra,* 42 Cal.App.4th at pp. 590–591.) The issue of overtime wages is much the same." (*Kim v. Regents,* at p. 167.)

---

(2003) pp. 391, 393, 397, and 2008 supp., pp. 104, 105–111.) Section 226.7 regarding meal and rest periods is located in chapter I ("Payment of Wages") of part I ("Compensation") of division 2. (44 West's Ann. Lab. Code, *supra,* p. 320, and 2008 supp., pp. 58, 85–89.) Labor Code section 1194 authorizing employees to seek to recover in a civil action the unpaid balance of minimum wage or overtime compensation, plus interest, attorney's fees and costs of suit, is found in chapter 1 ("Wages, Hours and Working Conditions") of part 4 ("Employees") of division 2 ("Employment Regulation and Supervision") of the Labor Code. (44 West's Ann. Lab. Code, *supra,* pp. 627, 668–671, and 2008 supp., pp. 155, 162–166.)

Location of these sections is of limited utility in any event, as the question is not what was the Legislature's intent, but what is the scope of the constitutional grant of power to the county. Similarly, the express recognition by Labor Code section 220, subdivision (b), that "[s]ections 200 to 211, inclusive, and [s]ections 215 to 219, inclusive, do not apply to the payment of wages of employees directly employed by any county . . ." provides no support for appellants' argument that Labor Code sections 510, 512, 226.7 and 1194 apply to counties, because they are not expressly made inapplicable by section 220. The argument appears weak in any event, but to the extent it is based on a view of legislative intent, it is also beside the point.

[12] The wage order pertinent to Kim's occupation specifically stated that its provisions " 'shall not apply to employees directly employed by the State or any county . . . .' [Citation.]" (*Kim v. Regents, supra,* 80 Cal.App.4th at p. 166) and that the overtime provisions of the wage order did not apply to persons employed in Kim's capacity (*ibid.*).

Appellants contend that *Kim v. Regents, supra,* 80 Cal.App.4th 160, is inapposite as it involves The Regents of the University of California and the "formidable autonomy" granted by the Constitution to the Regents to organize and govern the university as independently of the state as possible, with only limited exceptions. (*Kim v. Regents,* at pp. 166–167.) The constitutional grant of power to charter counties and to the University of California are not coextensive. Nevertheless, California courts have applied interchangeably the reasoning from cases involving one type of entity to cases involving the other in the context of the constitutional delegation of issues of employee compensation. (See, e.g., *County of Riverside, supra,* 30 Cal.4th 278, 288 [relying upon both *Sonoma County, supra,* 23 Cal.3d 296, a charter county case, and *San Francisco Labor Council, supra,* 26 Cal.3d 785, involving the Regents].) *San Francisco Labor Council* also relies upon *Sonoma County* for the proposition that the statute requiring payment of prevailing wages is effectively a salary-setting statute and that such was not a matter of statewide concern. (*San Francisco Labor Council, supra,* 26 Cal.3d at pp. 789–791; accord, *Aubry, supra,* 42 Cal.App.4th at pp. 588–589.)

Appellants cite no authority to support their contention that overtime pay is not a part of a charter county's compensation powers, but is a matter of working conditions outside the county's constitutional authority. To the contrary, in the course of determining the appropriate statute of limitations period for claims under Labor Code section 226.7, *Murphy, supra,* 40 Cal.4th 1094 relied upon the fact that the courts have long treated overtime pay as compensation. (*Id.* at pp. 1109–1111.) The Supreme Court recognized that, although overtime pay "serves a secondary function of shaping employer conduct," "*its central purpose is to compensate employees for their time . . . .*" (*Id.* at p. 1109, italics added.) The court described overtime pay as "overtime wages." (*Ibid.*)

We are persuaded that overtime pay as described in Labor Code sections 510 and 1194 addresses matters of "compensation." Further, we agree with those cases that have concluded that such compensation matters are of local rather than statewide concern. (See *County of Riverside, supra,* 30 Cal.4th at pp. 287–288; *San Francisco Labor Council, supra,* 26 Cal.3d at pp. 789–791; *Sonoma County, supra,* 23 Cal.3d at pp. 316–317; *Kim v. Regents, supra,* 80 Cal.App.4th at p. 167; *Aubry, supra,* 42 Cal.App.4th at pp. 588–589.)

■ We therefore conclude that Labor Code sections 510 and 1194 relating to overtime pay address matters of "compensation" within the county's exclusive constitutional purview pursuant to article XI, sections 1, subdivision (b), and 4.

### C. *Meal and rest break claims under Labor Code sections 512 and 226.7*

Appellants contend that meal and rest break claims relate to working conditions and not to compensation. Considered in a vacuum, the argument seems plausible. However, appellants are actually seeking monetary compensation for having been required to work through meal and rest breaks. As in our discussion of overtime pay, the link to compensation seems clear. As we have discussed above, our Supreme Court has recognized that, in addition to the statutory language and its legislative history, the "compensatory purpose of the remedy" provided in Labor Code section 226.7 for violations of meal and rest period regulations, "compel[s] the conclusion that the 'additional hour of pay' (*ibid.*) is a premium wage intended to compensate employees . . . ." (*Murphy, supra,* 40 Cal.4th at p. 1114.)

*In re Work Uniform Cases* (2005) 133 Cal.App.4th 328 [34 Cal.Rptr.3d 635] also recognizes that the "compensation" within the purview of counties (both charter and noncharter) relates to a broader spectrum of activities than merely setting salaries. Plaintiffs in *In re Work Uniform Cases* alleged that the defendants had violated the indemnification provisions of Labor Code section 2802 in failing to compensate them for the actual cost of purchasing, replacing, cleaning and maintaining required work uniforms. (133 Cal.App.4th at p. 332.) The trial court held with respect to city and county defendants that "article XI of the state Constitution vests the power to prescribe the terms and compensation for employees with the city and county defendants . . . ," and that interpreting the Labor Code to require payment for uniform purchase and maintenance "would infringe on that constitutional delegation of power." (*Id.* at p. 333.) The court affirmed, rejecting the plaintiffs' argument that paying for the cost of an employee's uniform was distinct from setting the wages of public employees, as it was not dependent upon performing labor. (*Id.* at pp. 337–338, 345.) The court concluded that payment for work uniforms was a "part of the employees' compensation and should be considered like any other payment of wages, compensation or benefits. The impact of this determination is that it places plaintiffs' claim of entitlement to compensation for uniform expenses as indemnification under section 2802 in direct conflict with a public entity's power to provide for compensation of its employees . . . ." (*Id.* at p. 338.)

Moreover, no case cited by the parties draws the type of distinction appellants posit between compensation and working conditions with respect to the home rule provisions applicable to charter counties.

*People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145] (*Seal Beach*), relied upon

by appellants, does not draw such a distinction. That case held that the city was required to comply with the "meet and confer" requirements of the Meyers-Milias-Brown Act (MMBA; Gov. Code, § 3500 et seq.) before proposing amendments to the city charter concerning the terms and conditions of public employment. (*Seal Beach,* at pp. 594, 602.) *County of Riverside, supra,* 30 Cal.4th 278, recognizes that "in [*Seal Beach*], *supra,* 36 Cal.3d 591, the law in question did not establish a binding process but merely imposed procedural requirements." (*County of Riverside,* at p. 288.) Quoting *Seal Beach* with approval, the Supreme Court reiterated: " 'While the Legislature established a procedure for resolving disputes regarding wages, hours and other conditions of employment, *it did not attempt to establish standards for the wages, hours and other terms and conditions themselves.*' (*Id.* at p. 597.) We found no conflict between the city's constitutional powers and the limited state regulation. 'Although the [law in issue] encourages binding agreements resulting from the parties' bargaining, the governing body of the agency . . . retains the ultimate power to refuse an agreement and to make its own decisions.' (*Id.* at p. 601.)" (*County of Riverside,* at pp. 288–289, italics added.)

▓ In sum, the provisions of Labor Code section 512 prescribing meal periods, and Labor Code section 226.7 providing a premium wage as compensation for missed meal and rest periods, are matters of compensation within the county's exclusive constitutional purview. As we have discussed above with respect to appellants' overtime claim, we agree with those cases that have concluded that such compensation matters are of local rather than statewide concern. (See *County of Riverside, supra,* 30 Cal.4th at pp. 287–288; *San Francisco Labor Council, supra,* 26 Cal.3d at pp. 789–791; *Sonoma County, supra,* 23 Cal.3d at pp. 316–317; *In re Work Uniform Cases, supra,* 133 Cal.App.4th at pp. 338–340; *Kim v. Regents, supra,* 80 Cal.App.4th at p. 167; *Aubry, supra,* 42 Cal.App.4th at pp. 588–589.)

   D.   *The charter, ordinances and memoranda of understanding (MOU's)*

▓ Appellants argue that the County of Alameda Charter is silent with respect to overtime, meal and rest break regulations and that the Labor Code provisions therefore do not conflict with the charter. Appellants base their argument on the italicized portion of the following statement in *Younger v. Board of Supervisors* (1979) 93 Cal.App.3d 864 [155 Cal.Rptr. 921] (*Younger*): " 'It is elementary law that a charter provision relating to county officials is valid only if authorized by the state Constitution.' [Citations.] *Since counties constitute merely political subdivisions of the state (Cal. Const., art. XI, § 1, subd. (a); [citations]), they have independently only such legislative authority that has been expressly conferred by the Constitution and*

*laws of the state. If the latter sources are silent in regard to the delegation of such authority, the authority must still rest with the Legislature. [Citation.]* However, if a charter provision is properly authorized, then it supersedes general state laws in conflict, but only to the extent it is not limited by the Constitution. [Citation.] ■ For, it is without dispute that local rules or regulations relating to matters which a county is constitutionally empowered to regulate by charter supersede general state laws on the subject, except as to matters covered by general law where '(a) the local legislation attempts to impose additional requirements [citations], or (b) the subject matter is one of state concern, and the general law occupies the entire field [citation], or (c) the subject matter is of such statewide concern that it can no longer be deemed a municipal affair [citation].' [Citation.] [¶] Therefore, a charter county has only those powers and can enact within its charter only those provisions authorized by the Constitution. These include those enumerated in article XI, section 4, *supra.* Further, in light of the language of subdivision (h) of section 4, a charter county has all powers provided for counties under the general laws as well, including those powers 'necessarily implied from those expressed.' (Gov. Code, § 23003.)" (*Younger, supra,* 93 Cal.App.3d at p. 870, italics added.)

Appellants have misread the italicized portion of the statement. As a reading of the entire passage confirms, the reference to the silence of "the latter sources," refers not to the silence of the county's charter, but to the silence of the Constitution and laws of the state "in regard to the delegation of such authority." (*Younger, supra,* 93 Cal.App.3d at p. 870.) As the reference to California Constitution, article XI, section 4 indicates, the court in *Younger* recognized that charter counties had been delegated power over employee compensation and that the charters were required to "provide for: [¶] . . . [¶] . . . The fixing and regulation by governing bodies, by ordinance, of the appointment and number of . . . persons to be employed, and for the prescribing and regulating . . . of the powers, duties, qualifications, and compensation of such persons . . . ." (Cal. Const., art. XI, § 4, subd. (f).)

■ The foregoing provision also answers appellants' claim that the charter itself is silent as to issues of overtime, meal and rest breaks. Article XI, section 4 of the California Constitution states that "[t]he fixing and regulation" of such matters is to be "by ordinance" and there is no authority that such regulations must be detailed in the charter itself.

Moreover, the County of Alameda has provided for compensation in its charter and through adoption of the Alameda County Administrative Code, salary ordinances and MOU's.[13]

Section 48 of the Charter of the County of Alameda provides: "In fixing compensation, the Board of Supervisors shall in each instance provide a salary or wage at least equal to the prevailing salary or wage, for the same quality of service rendered to public employers and private persons, firms or corporations under similar employment, in case such prevailing salary or wage can be ascertained." (Alameda County Charter, § 48.)

The Alameda County Administrative Code, title 3 ("Personnel"), chapter 3.28 ("Overtime"), contains comprehensive regulations relating to overtime, including, but not limited to, requirements for written authorization and record keeping (ch. 3.28.030) and provisions for methods of compensation, which are limited to straight time rate, absent an exception set forth in the chapter or designated by resolution or by MOU adopted by the board of supervisors (ch. 3.28.040). (See <http://municipalcodes.lexisnexis.com/codes/alamedadmin/> [as of June 5, 2008].)

A salary ordinance has also been adopted by the County of Alameda, "providing for the compensation and designating the number of officers, boards, and commissions, and of assistants, deputies, clerks, attaches and other persons employed in the offices and institutions of the County and providing rules and regulations relative thereto." (<www.acgov.org/hrs/salary_ord/index.htm> [as of June 5, 2008].) Section 3-17.1 of this ordinance applies to the sheriff's department and to persons assigned to positions listed in the ordinance and assigned to work at the Santa Rita Jail, among other facilities, and "whose duties prevent leaving the premises for meals." The ordinance provides these persons "shall be entitled to regular meals occurring at . . . Santa Rita Jail . . . in addition to the compensation above specified." (*Ibid.*)

In addition, various MOU's have been entered into between the County of Alameda and county employees organized as permitted by the MMBA. For instance, the MOU between the County of Alameda and the Deputy Sheriffs'

---

[13] The Alameda County Administrative Code, salary ordinance, and the MOU between the Deputy Sheriffs' Association of Alameda County and the County of Alameda were not presented to the trial court, probably because respondents were relying upon the asserted immunity from penalties under Government Code section 818. (See fn. 10, *ante.*) Nevertheless, we properly may take judicial notice of them on our own motion. (Evid. Code, §§ 452, subd. (b), 459.) In accordance with Evidence Code section 459, subdivision (d), we have provided the parties the opportunity to present information relevant to the propriety of taking judicial notice of these matters. We therefore take judicial notice of these regulations, ordinances, and the MOU. (Evid. Code, §§ 452, 459.)

Association of Alameda County (which does not appear to include appellants) addresses hours of work (§ 6.B.), rest periods (§ 6.D.), overtime (§ 7) and meals (§ 16). (See <www.acgov.org/hrs/documents/Deputy_Sheriffs_%20Assn.pdf> [as of June 5, 2008].)

Consequently, although we do not accept the dubious proposition that the Labor Code sections would apply to fill a void in a charter county's compensation scheme, such void does not appear to exist here.

We conclude that the court did not err in sustaining the demurrers to appellants' causes of action under the Labor Code.

### III. Fraud Claims

The trial court sustained respondents' demurrer to the fraud-based causes of action of the complaint on the grounds that the County of Alameda was immune pursuant to Government Code section 818.8, as conceded by appellants, and that the individual sheriff's office employees were immune under Government Code sections 820.2 and 822.2, as appellants had failed to allege "facts to establish the elements of fraud or facts showing that any alleged misrepresentations were motivated by actual malice or corruption or actual fraud." Appellants contend they sufficiently alleged facts showing actual malice, corruption or actual fraud to withstand the demurrer.

Appellants appear to recognize that liability cannot be premised on the initial award of the bid to Good News or the failure to award the bid to Community Chaplains, Inc. "Because the award of a public contract involves the exercise of discretion, the government employees and entities involved are immune from liability. [Citations.] Government Code section 820.2 reads: 'Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.' " (*Monterey Mechanical Co. v. Sacramento Regional County Sanitation Dist.* (1996) 44 Cal.App.4th 1391, 1413 [52 Cal.Rptr.2d 395]; see *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 313, 315, fn. 2 [96 Cal.Rptr.2d 747, 1 P.3d 63].) Although appellants contend otherwise, it appears to us that the core of appellants' fraud causes of action is the initial decision to award the chaplaincy contract to Good News and later to no one. In every award of a public contract there is at least an implied promise that the decisionmakers involved will fairly evaluate the bids received. To immunize respondent county sheriff's office employees for an alleged abuse of discretion in awarding the bid, but allow a cause of action based upon their allegedly false representations or promises that they would evaluate the bids

fairly or upon their alleged concealing of their intent not to evaluate the bids fairly, but rather to "rig" the bid, would eviscerate the immunity provided by Government Code section 820.2 for the public employees' exercise of discretion.

Were we to assume that the Government Code section 820.2 immunity did not extend to the allegations that respondents would fairly evaluate the bids, on the facts here alleged, we would nevertheless affirm the judgment on the basis of the immunity provided by section 822.2 of the Government Code. Pursuant to that section, "[a] public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice." (Gov. Code, § 822.2.) " '[T]he immunity afforded by Government Code section 822.2 applies unless, in addition to the essentials of common law deceit, a public employee is motivated by corruption or actual malice, i.e., a conscious intent to deceive, vex, annoy or harm the injured party.' (*Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401, 409–410 [123 Cal.Rptr. 669], overruled on another point in *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143]) with respect to her financial dealings." (*Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 42 [37 Cal.Rptr.2d 860] (*Masters*).)

Nor are conclusory allegations of corruption or malice sufficient to bring a fraud action within the exception of Government Code section 822.2. In addition to facts establishing the ordinary elements of common law deceit, the pleader also must allege *facts* showing that the fraud was motivated by corruption or actual malice. (*Masters, supra,* 32 Cal.App.4th at p. 42.)

Appellants were required to allege with specificity the misrepresentation, false promise or concealment. "The essential allegations of an action for fraud are misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damage. [Citation.] Every element of the cause of action for fraud must be alleged in the proper manner and the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made. [Citation.]" (*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 109–110 [128 Cal.Rptr. 901]; see *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157 [2 Cal.Rptr.2d 861].)

The third amended complaint identified the intentional misrepresentation of fact to be that defendants represented that "if [appellants] responded to the Request for Proposal issued by the County Sheriff's Office, then defendants, and each of them, equally and fairly would evaluate the proposal of Community Chaplains under the terms of the Request for Proposal." Similarly, the

cause of action for false promise identifies the false promise to be that the individual defendants "equally and fairly would evaluate the proposal of Community Chaplains under the terms of the Request for Proposal." No specific concealed facts are identified in the cause of action for concealment. However all previous allegations are incorporated by reference into each succeeding cause of action.

On appeal, in identifying the fraudulent representation, promise, or concealment, appellants first maintain in their opening brief that "[t]he fraud was *not* in the inducement of the Appellants to bid, but, rather, the misrepresentation that if Appellants bid, they would be fairly considered for the contract." (Italics added.) However, in their reply brief, appellants contend, somewhat inconsistently, that "the complaint is that the deputies deceived the chaplains into pursuing the bid process in the first place, at great time and expense to those chaplains, without any intent to consider the chaplains at any point."

The third amended complaint alleges in a conclusory manner that the representations, false promises and concealments were done "for corrupt purposes and/or with malice towards plaintiffs and their interests" and that defendants' conduct "was intended . . . to cause injury to plaintiffs or constituted despicable conduct which was carried on by defendants, and each of them, with a willful and conscious disregard of the rights of plaintiffs." Conclusory allegations such as these are insufficient to survive a demurrer. (*Masters, supra,* 32 Cal.App.4th at p. 42.)

Appellants contend that they have alleged sufficient corruption and malice because they have alleged that the individual respondents mismanaged or misused the Inmate Welfare Fund, and then sought to cover up this "corruption" by offering to put the chaplaincy services contract out for public bid, intending to "rig" the bid. However, appellants fail to connect respondents' alleged improper mismanagement of funds in the Inmate Welfare Fund to any direct harm to appellants. The mere existence of corruption or wrongdoing, unconnected to the alleged harm to appellants, is insufficient.

Appellants' fraud claim is not based on the fact that respondents determined to contract out the chaplaincy service to cover their alleged misuse of funds; it is based on appellants' assertion they were not given a fair chance to win that contract. Appellants do not contend that it was fraudulent to offer a contract, but that it was fraudulent to offer the contract when, contrary to the individual respondents' representations to appellants, respondents had no intention to fairly consider the bids. The complaint does not adequately connect the allegations of corruption in the mismanagement of the fund and the asserted scheme to contract out the chaplaincy service to the alleged unfairness in evaluating the contract bidders. The allegations of the complaint

indicate respondents were motivated by their alleged mismanagement of the fund to award the contract to the lowest bidder. The most *obvious* indicia of unfairness in a bidding process is awarding a contract to someone other than the lowest qualified bidder. There is no claim that Good News was not the lowest bidder. In fact, appellants contend the respondents could save "a significant amount of money by bringing in Good News . . . ." Although appellants do allege that Good News was unprepared to perform the required services, there was no unfairness to appellants, because Good News was not ultimately awarded the contract. No other fraud or unfairness is discernable from the facts alleged. There are no facts to suggest that appellants should have won the contract, but did not, or that the decision to *withdraw* the contract was based on an unfair evaluation of appellants' bid. Appellants do not allege that the rationale provided by respondents for withdrawing the contract, that "all bids received for this service were not in compliance with all requirements," was false.

Moreover, as respondents point out, "[a]ppellants' allegations regarding [r]espondents['] desires and motivations are fraught with inconsistency." Respondents wanted to award the contract to Good News and so "rigged" the contract to award it to Good News. However, Good News was not ultimately awarded the contract. Respondents wanted to keep appellants working at Santa Rita Jail as long as possible and then get them to go to work for Good News. Good News was not awarded the contract, so the chances that appellants would quit to work for Good News were small. Appellants alleged respondents wanted to get rid of them and, if they did not go to work for Good News, they would be fired. Appellants nowhere allege they were fired. Moreover, if Good News had won the bid and appellants had gone to work for that entity (as respondents allegedly planned) respondents would not be rid of them. Respondents allegedly engaged in the bidding process to obtain appellants' "knowledge (in the form of having [appellants] go to work for Good News . . .) and business plan . . . ." However, appellants nowhere contend that respondents or Good News obtained either appellants' knowledge or business plan.

The complaint does not appear to state facts sufficient to support appellants' conclusory allegations of corruption or actual malice in connection with the alleged fraud-based claims. Nor have appellants asserted that it could be amended to do so. The demurrer was properly sustained as to each of the respondent sheriff's office employees on the ground of immunity.

## DISPOSITION

The judgment is affirmed.

Haerle, J., and Lambden, J., concurred.