Filed 12/11/14  Hamilton v. Carr CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PAUL C. HAMILTON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>B. CARR et al.,<br><br>    Defendants and Respondents. | F068413<br><br>(Super. Ct. No. 11CEG02801)<br><br>**OPINION** |

---

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Alan M. Simpson and Kristi Culver Kapetan, Judges.

Paul C. Hamilton, in pro. per., for Plaintiff and Appellant.

Burke, Williams & Sorensen, Susan E. Coleman and Mitchell A. Wrosch for Defendants and Respondents.

-ooOoo-

---

[*]    Before Hill, P. J., Cornell, J. and Gomes, J.

Defendants' demurrer to plaintiff's first amended complaint was sustained with leave to amend as to one defendant, and without leave to amend as to the remaining defendants, on the ground it failed to state a cause of action. Plaintiff declined to amend and the judgment was entered in favor of all defendants. We affirm, concluding the first amended complaint failed to state a cause of action against defendants, and plaintiff has not shown how the first amended complaint could have been amended to cure the defects.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff is a state prison inmate. He filed a complaint against four prison employees, alleging one cause of action under the "Bane Act" (Civ. Code, § 52.1)[1] for violation of his right to practice his religion. Defendant's demurrer to the original complaint was sustained with leave to amend. Plaintiff filed a first amended complaint, which purported to incorporate by reference all of the allegations of the original complaint and to add new paragraphs numbered 18 through 24. As so amended, plaintiff's pleading alleged correctional officer Morelock violated plaintiff's right to practice his religion when he confiscated plaintiff's kufi cap, a Muslim prayer cap, by snatching it off plaintiff's head and yelling, "'Get out of here,'" as plaintiff was proceeding to Muslim prayer services on September 10, 2010, the eve of the ninth anniversary of the destruction of the World Trade Center's twin towers, "supposedly by radical Muslims." Plaintiff alleged, on information and belief, that defendant Myers orchestrated and supported Morelock's acts; defendants Carr and Lyman supported the acts by "offering false documentation" and "deliberately turning a deaf ear to the truth of the matter." Plaintiff asserted that, even if confiscation of the cap was authorized, snatching the cap and making intimidating remarks were not and were unlawful.

Defendants demurred to the first amended complaint, contending the facts alleged failed to state a cause of action under the Bane Act. The trial court sustained the

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

2

demurrer as to Morelock with leave to amend, because plaintiff might have been able to allege a cause of action for assault and battery.  It sustained the demurrer as to the other defendants without leave to amend.  Plaintiff's subsequent motion for rehearing and reconsideration was denied.  Plaintiff expressly declined the opportunity to amend as to defendant Morelock, and judgment was entered against him in favor of all defendants. He appeals.[2]

## *DISCUSSION*

### I.      Standard of Review

"On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.  [Citations.]  We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context.  [Citations.]" (*Lazar v. Hertz Corp*. (1999) 69 Cal.App.4th 1494, 1501.)  "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "'We do not review the reasons for the trial court's ruling; if it is correct on any theory, even one not mentioned by the court, and even if the court made its ruling for the wrong reason, it will be affirmed.  [Citations.]' [Citation.]" (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 637-638 (*Curcini*).)

---

**2**      Plaintiff filed a request for judicial notice of two documents.  The request contained no explanation of the relevance of the documents to the issues on appeal.  (See Cal. Rules of Court, rule 8.252(a)(2)(A).)  Judicial notice may be taken only when the matter is relevant to the proceedings.  (*People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6.)  We conclude the matters of which plaintiff requests judicial notice are not relevant to the issue presented by this appeal: whether the first amended complaint states a cause of action under section 52.1, the Bane Act, for violation of plaintiff's right to practice his religion.  Therefore, the request for judicial notice is denied.

When the trial court sustains a demurrer without leave to amend, we review the decision to deny leave to amend for abuse of discretion. (*Curcini, supra*, 164 Cal.App.4th at p. 637.) If the plaintiff has shown a reasonable possibility the defect could be cured by amendment, denial of leave to amend is an abuse of discretion. (*Ibid.*) The burden is on the plaintiff to demonstrate a reasonable possibility the defect could be cured by amendment. (*Ibid.*) Because plaintiff has proposed no amendments to his first amended complaint that he contends would cure the defects, the only question before us is whether the allegations of the first amended complaint state a cause of action.

## II.    Cause of Action under the Bane Act

The Bane Act provides:

> "(a)  If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief ….

> "(b)  Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages …." (§ 52.1, subds. (a), (b).)

"The Bane Act and related statutes 'are California's response to [the] alarming increase in hate crimes.' [Citation.]" (*Bay Area Rapid Transit Dist. V. Superior Court* (1995) 38 Cal.App.4th 141, 144.) Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 334.) "To obtain relief under Civil Code section 52.1, a plaintiff need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if he or she interfered with the plaintiff's constitutional rights by the

4

requisite threats, intimidation, or coercion. [Citation.]" (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 882 (*Austin B*.).) "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law. [Citation.]" (*Id.* at p. 883.)

The trial court set out the elements of a cause of action under section 52.1, based on *Austin B., supra,* 149 Cal.App.4th at p. 882, and its citation of former CACI No. 3025 (now CACI No. 3066). The trial court's formulation required allegations "that the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts" and "that the plaintiff reasonably believed that if he or she exercised his or her constitutional right the defendant would commit violence against him or her or his or her property." The trial court defined the term "violence," and determined the allegations of snatching the cap from plaintiff's head and yelling "get out of here" did not constitute violence or a threat of violence. Accordingly, it found plaintiff had not stated a cause of action under section 52.1.

It is unclear whether violence or a threat of violence is required for violation of section 52.1. By its express terms, the statute requires interference with a person's rights "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion." (§ 52.1, subd. (a).) Violence is not mentioned in section 52.1, subdivision (a) or (b). Section 52.1, subdivision (j), however, provides:

> "Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."

5

Thus, it is clear that a threat of violence is required when the violation of section 52.1 was allegedly accomplished through speech alone.

It is less clear whether violations allegedly accomplished through coercion or intimidation require actual violence or the threat of violence. The directions for use accompanying CACI No. 3066 indicate it is not clear whether a valid claim under section 52.1 could be "based on threats, intimidation, or coercion involving a nonviolent consequence." (CACI No. 3066, Directions for Use, citing "*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 [(*Shoyoye*)] … [we 'need not decide that every plaintiff must allege violence or threats of violence in order to maintain an action under section 52.1']; *City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 408 … [also noting issue but finding it unnecessary to address].")

In his concurring opinion in *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 (*Venegas*), Justice Baxter noted that section 51.7, the "Ralph Act," prohibits "violence, or intimidation by threat of violence, committed against their persons or property because of their … actual or perceived membership in a … protected class." (*Venegas,* at p. 845.) The Bane Act, added 10 years after the Ralph Act, prohibits interference with an individual's rights "by threats, intimidation, or coercion," based on membership or perceived membership in a protected class. (*Venegas,* at p. 846, italics omitted.) According to Justice Baxter, "the stated purpose of the Bane Act was to subject 'the use of force *or threats* to interfere with the free exercise of one's constitutional rights' [citation], based on the victim's membership or perceived membership in one of the enumerated protected classes, to both civil and criminal remedies. In other words, what the Bane Act did at its inception was to add 'threats, intimidation or coercion' to the already proscribed 'violence, or threats of violence' sanctioned under the Ralph Act, where any such conduct interferes with or attempts to interfere with the statutory and

6

constitutional rights of" actual or perceived members of a protected class. (*Venegas,* at p. 847, some italics omitted.)

One federal court has stated:

"Section 52.1 prohibits interference with civil rights through 'threats, intimidation, or coercion.' The statute does not expressly define these terms, and thus the Court must give these words their usual, ordinary meaning [citation]. However, the statute does expressly exclude speech alone from the scope of actionable threats, intimidation, or coercion, unless the 'speech itself threatens violence against a specific person or group of persons.' [Citation.] Therefore, giving the words at issue their ordinary meaning while including the express limitation contained in the statute, the Court concludes that a defendant violates this statute by expressing an intent to inflict violence on the plaintiff; by making the plaintiff timid or fearful, either through actions or through speech expressing an intent to inflict violence; or by restraining or dominating the plaintiff by force." (*Veal Connection Corp. v. Thompson* (N.D.Cal. Feb. 3, 2004) 2004 U.S. Dist. LEXIS 6953, at pp. 27-28 (*Veal*).)

In *Shoyoye, supra,* 203 Cal.App.4th at page 958, where the plaintiff was mistakenly detained in jail after he should have been released, the court stated: "The statutory framework of section 52.1 indicates that the Legislature meant the statute to address interference with constitutional rights involving more egregious conduct than mere negligence." The court continued:

"While we are not prepared to and need not decide that every plaintiff must allege violence or threats of violence in order to maintain an action under section 52.1 [citation], we conclude that the multiple references to violence or threats of violence in the statute serve to establish the unmistakable tenor of the conduct that section 52.1 is meant to address. The apparent purpose of the statute is not to provide relief for an overdetention brought about by human error rather than intentional conduct." (*Shoyoye,* at p. 959.)

The *Shoyoye* court also noted the legislative history indicated the Legislature considered, but rejected, a proposal to delete the language requiring that the interference with rights be accomplished by threats, intimidation, or coercion. (*Shoyoye, supra*, 203 Cal.App.4th at p. 959.) A bill analysis indicated that tort remedies were available to

redress interference with statutory or constitutional rights; section 52.1 "'focuse[d] specifically on the <u>additional</u> element present especially in hate violence, viz., putting persons in fear of their safety. It is the element of threat, intimidation, or coercion that is being emphasized in Civil Code § 52.1.'" (*Shoyoye,* at p. 959.) The *Shoyoye* court concluded: "The legislative history thus supports our conclusion that the statute was intended to address only egregious interferences with constitutional rights, not just any tort. The act of interference with a constitutional right must itself be deliberate or spiteful." (*Ibid.*)

From the foregoing authorities, we conclude that, even if the Bane Act's proscription of interference with constitutional or statutory rights by threats, intimidation, or coercion applies to a broader spectrum of conduct than the Ralph Act's proscription of interference with such rights by violence or the threat of violence, nonetheless, the Bane Act was intended to address only egregious conduct, involving force or violence, deliberately aimed at interfering with the victim's constitutional or statutory rights.

In his original complaint, which plaintiff incorporated by reference into the first amended complaint, plaintiff alleged that, when he arrived at the chapel for prayer services on September 10, 2010, he was "denied entrance by Sergeant Carlton's orders because plaintiff had to go to medical clinic first." He alleged Morelock confiscated his black kufi cap by removing it from his head, based on an August 3, 2010, memorandum indicating the religious review committee had recommendations pending to change the department operations manual so that the only "[a]llowable colors for religious headwear will be white and/or grey." The memorandum attached as an exhibit to the complaint and the first amended complaint, however, stated the change to the operations manual "will be effective immediately." The copy of the memorandum attached to the first amended complaint was marked "approved" and signed by the warden. The original complaint discussed the cost of the cap ($500), alleged plaintiff was not given an opportunity to

send the cap home, explained he did not want the cap returned because it had been "desecrated by the touch of an infidel," and asserted other prisoners were allowed to retain articles of personal property even though they had been "outlawed years ago." Both complaints alleged defendants' acts were discriminatory and interfered with plaintiff's right to freely practice his religion.

The first amended complaint alleged that, when Morelock confiscated the kufi cap, "it was done with great hostility, a sudden snatch, causing me to duck, with the next expectation to be hit by" Morelock. Further, as plaintiff "backed up in fear,… Morelock shouted 'Get out of here,' meaning go away from the chapel area." Plaintiff alleged he "became very fearful and felt intimidated due to these threatening actions and remarks made, backed up by Morelock's supervisor," and the acts and remarks prevented him from attending prayer services.

The allegations of the first amended complaint, including those incorporated from the original complaint, indicate plaintiff was prevented from attending prayer services because he "had to go to medical clinic first," and Morelock snatched the kufi cap off his head "with great hostility" and confiscated it because of a memo indicating black religious headwear had recently become prohibited at the prison. Plaintiff disputed whether the change reflected in the memo had actually gone into effect at the time Morelock confiscated his kufi cap.

The allegations of the first amended complaint reflect a dispute about prison rules and regulations and the confiscation of plaintiff's personal property, which may have been prohibited by a change in those rules. We conclude the pleading does not allege defendants interfered with or attempted to interfere with the plaintiff's right to practice his religion "by threatening or committing violent acts" (CACI No. 3066), "by making the plaintiff timid or fearful, either through actions or through speech expressing an intent to inflict violence[,] or by restraining or dominating the plaintiff by force" (*Veal, supra*,

9

2004 U.S. Dist. LEXIS 6953, at pp. 27-28).  The alleged speech ("'Get out of here'") did not threaten plaintiff with violence.  The alleged conduct, even combined with the alleged speech, does not amount to an egregious interference with plaintiff's constitutional right that is deliberate or spiteful.  (*Shoyoye, supra*, 203 Cal.App.4th at p. 959.)  It does not involve the violence or force, or the threat of violence or force, contemplated by section 52.1.  Consequently, we conclude plaintiff's first amended complaint does not state a cause of action under the Bane Act for violation of plaintiff's right to practice his religion.  The demurrer to the first amended complaint was properly sustained.

### *DISPOSITION*

The judgment is affirmed.  Defendants are entitled to their costs on appeal.