Filed 11/20/15  Salinas Renaissance Partners v. Salinas Redevelopment Agency CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SALINAS RENAISSANCE PARTNERS, LLC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SALINAS REDEVELOPMENT AGENCY, et al., <br><br> Defendants and Respondents. | H039740 <br> (Monterey County <br> Super. Ct. No. M108505) |

Salinas Renaissance Partners, LLC (Renaissance) consists of real estate developers Robert Leidig and his son, Curtis Leidig.  Renaissance proposed to create a comprehensive plan for developing or redeveloping a portion of the City of Salinas's (City) publically owned property.

In January 2009, Renaissance entered into a Project Planning and Negotiating Rights Agreement (Agreement) with City and the Salinas Redevelopment Agency (Agency).  The Agreement provided Renaissance exclusive negotiating rights with Agency and City in exchange for its promise to shoulder all of the cost associated with creating a development plan.

The Agreement provided for a 10-month period of exclusive negotiations between Renaissance and Agency and City. In November 2009, at the conclusion of the 10-month period, Agency and City terminated the Agreement.

Renaissance filed suit against Agency, City, and Dennis Donohue, the City Mayor at the time of the Agreement. As to Agency and City, Renaissance alleged causes of action for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, unjust enrichment and negligence. As to Mr. Donohue, Renaissance alleged causes of action for interference with contract, interference with prospective advantage, intentional misrepresentation and concealment "in his individual capacity only." Finally, Renaissance alleged a cause of action for injunctive relief against Agency, City and Mr. Donohue.

Agency, City and Mr. Donohue filed a demurrer to Renaissance's second amended complaint. The trial court sustained the demurrer without leave to amend as to all causes of action except that for injunctive relief. Renaissance dismissed the injunctive relief cause of action with prejudice, and the court entered judgment in favor of Agency, City and Mr. Donohue. This appeal followed.

## DISCUSSION

We review a judgment of dismissal after the trial court has sustained a demurrer without leave to amend under the de novo standard of review. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) We assume the truth of (1) all facts properly pleaded, (2) facts that may be implied or reasonably inferred from the facts expressly alleged, and (3) evidentiary facts that are in exhibits attached to the complaint. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6, (*Evans*).)

We may also consider matters that are properly judicially noticed. (*Schifando, supra*, 31 Cal.4th at p. 1081.) But we do not assume the truth of contentions, deductions or conclusions of fact or law. (*Evans, supra*, 38 Cal.4th at p. 6.) If facts appearing in

2

exhibits to the complaint conflict with the allegations of the complaint, the facts stated in the exhibits control, unless the exhibits are ambiguous. (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83.) We give the complaint a reasonable interpretation and read it in context. (*Schifando, supra*, at p. 1081.)

"[T]o prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) We will affirm the judgment if there is any ground on which the demurrer could have been properly sustained. (*Ibid*.)

When the trial court sustains a demurrer without leave to amend, we review its determination that no amendment could cure the defect for an abuse of discretion. (*Schifando, supra*, 31 Cal.4th at p. 1081.) The trial court abuses its discretion if "there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Ibid*.)

***The Second Amended Complaint***

On January 13, 2009, Agency, City and Renaissance entered into the Agreement, providing for the development of a number of parcels, including the "100 Block parcel," that made up 20.6 acres in the downtown area of the City. The Agreement further provided that Renaissance would have exclusive negotiating rights with the City for development of the area.

The Agreement provided that in exchange for exclusive negotiations, Renaissance would create a comprehensive "Development Program" for developing the parcels. Renaissance was to incur all costs associated with creating the "Development Program," including the cost of its own consultant, and the cost of reimbursing Agency and City for their consultants. The Agreement further provided that Renaissance would present to Agency and City "a preliminary analysis of the economic feasibility of private and public

3

development projects included in the Development Program, . . . including predevelopment costs; method of financing sources and uses of funds projected to be available (including lease, lease-back financing of some public facilities); and a preliminary pro forma and proposed business terms that will assume, a reasonable return to [Renaissance] given the financing and facilitation of the Visioning and Preferred Planning Phase and the risks and costs of development of the Parcels, the provision of the Public Buildings at a cost that is financially feasible to the City and Agency, and a participation return to the City and Agency after a reasonable return is achieved by [Renaissance]."

Renaissance was given a limited time period during which Agency and City would negotiate exclusively for potential development, specifically stating: "If the City Council and Agency Board have not approved a Term Sheet acceptable to [Renaissance] by [October 13, 2009], then this Agreement may be terminated pursuant to Section 6.1 below."

Section 6.1(b) allowed Agency and City to terminate negotiations at any time "in its sole business judgment." In addition, the Agreement provided that either Agency and City, or Renaissance could terminate negotiations prematurely if the other failed to negotiate in good faith. If Renaissance terminated negotiations because Agency and City failed to act in good faith, and Agency or City sold or leased the property that was the subject of the Agreement within three years, Renaissance could recover costs incurred in creating the Development Program.

There was no promise that Renaissance would be entitled to develop any of the property. Specifically, the Agreement states: "This Agreement . . . shall not obligate the parties or the City Council and/or Agency Board to enter into any Project Agreements, . . . By execution of this Agreement . . . neither the Agency or [*sic*] City is committing itself or agreeing to approve any land use entitlements, undertake option,

4

disposition or lease of any Parcel, or any part thereof or undertake any other acts or activities relating to the subsequent independent exercise of discretion by the Agency or City. Execution of this Agreement by the City and Agency is merely an agreement to conduct a period of negotiations in accordance with the terms hereof, reserving for subsequent Agency and City action the final discretion and approval regarding any Project Agreement and all proceedings and decisions in connection therewith, including consideration of any changes to the General Plan, Redevelopment Plan or City ordinance or resolution or adoption of a Specific Plan or similar plan. . . . As such, the Agency and the City retain the absolute discretion before action on the Project by the Agency governing board or the City Council to . . . (iv) determine not to proceed with the Project or any portion thereof." (Emphasis & fn. omitted.)

In addition, the Agreement provides that "[n]o damages shall be available for breach or failure under this Agreement." The Agreement included a waiver of personal liability of any individual, officer, employee or representative of Agency, City and Renaissance for any alleged default or breach.

After executing the Agreement, Renaissance began a "comprehensive visioning process" during which it hired consultants and conducted public meetings with City officials. In February 2009, Mr. Donohue introduced Renaissance to Tom McEnery, the former Mayor of San Jose, and some of his associates referred to as the "McEnery Group." Mr. Donohue expressed that he was "anxious" for Renaissance to meet with the McEnery Group to discuss a possible partnership for the development of the downtown area of the City. Discussions occurred between Renaissance and the McEnery Group. Renaissance formally rejected the McEnery Group's proposed partnership in June 2009.

In July 2009, Mr. Donohue began secretly communicating with the McEnery Group regarding development of the downtown area of the City. Mr Donohue also secretly communicated with Bruce Taylor, and asked Mr. Taylor to meet with the

5

McEnery Group about Mr. Taylor's interest in building a corporate headquarters for Taylor Farms in downtown.

In September 2009, the Agency director sent a letter to Renaissance saying that only the 100 block parcel was "ripe" for development, and the other parcels that were the subject of the Agreement would be excluded from future negotiation.

In October 2009, the City Manager represented to Renaissance that City was desirous of negotiating a term sheet for the 100 Block parcel. Renaissance and City continued to negotiate a term sheet for the 100 block parcel. Renaissance alleges that "[i]n the midst of [] good faith negotiations for the 100 block term sheet, on November 18, 2009, the City unexpectedly sent a 30 Day Notice of Termination to [Renaissance] pursuant to section 6.1(c) of the [Agreement]." The notice stated: "the City has determined, in its sole business judgment that it is not feasible to proceed with planning or negotiations under the [Agreement]."

In December 2009, Agency, City and Renaissance began to meet and confer in an attempt to resolve "issues of financial feasibility raised in the Notice."

In January 2010, the City Council voted to terminate the Agreement on the grounds that Renaissance "lacked financial qualifications; the projects were found to be financially not feasible; and that there were no viable investors or hotel operators interested in joining with [Renaissance] in the projects."

### Contract Causes of Action

Renaissance asserts four contract causes of action against Agency and City. The first and second causes of action in the second amended complaint allege breach of contract and breach of the covenant of good faith and fair dealing. Both causes of action are based on Renaissance's allegation that Agency and City terminated the Agreement "in bad faith and without proper justifiable cause." In addition, Renaissance alleges that Agency and City's acts of bad faith were made in secret, and Renaissance did not

6

discover the acts in time to exercise its right to terminate the Agreement early, and assert its rights and remedies as set forth in the Agreement. Renaissance seeks reimbursement for the costs and expenses it incurred in negotiating with Agency and City. In addition, Renaissance seeks attorneys fees pursuant to Code of Civil Procedure Section 1021.5, because "a significant benefit will be conferred on the general public, specifically the citizens of Salinas and the State of California."

The third and fourth causes of action are for promissory estoppel and unjust enrichment. The basis for these claims is that Renaissance was induced to rely on Agency and City's promise to negotiate in good faith, and incurred costs to pursue development, including "architectural design, planning and visioning tasks." In addition, the second amended complaint asserts that Agency and City's breach of promises were damaging to the public trust, and that "application of estoppel" against Agency and City is justified, "since doing so will actually benefit the public and support the operation of policies adopted to protect the public."

Agency and City notified Renaissance of their intent to terminate negotiations pursuant to section 6.1 of the Agreement, which provides that negotiations may be terminated "by the City and Agency, in their sole business judgment, upon giving not less than thirty (30) days prior written notice to the Developer and it is not feasible to proceed with planning or negotiations." In addition, the Agreement provided that "[i]f the City Council and Agency Board have not approved a Term Sheet acceptable to [Renaissance] by [October 13, 2009], then this Agreement may be terminated pursuant to Section 6.1 below."

The second amended complaint does not allege that Renaissance completed the Development Program anticipated in the Agreement, or completed a Term Sheet. Indeed, the second amended complaint alleges that by November 2009, no Term Sheet existed,

7

because Renaissance was sill "working on refining the proforma for the 100 Block parcel, (with all other parcels having been placed on the 'back burner')."

By the Agreement's own specific terms, Agency and City acted within their discretion in terminating negotiations with Renaissance at the end of the 10-month period. The contract causes of action asserted in the second amended complaint fail to state a claim for breach, estoppel or unjust enrichment.

Moreover, even if allegations of breach were sufficient, the Agreement itself bars recovery of damages for breach. Section 6.2(a) of the Agreement provides: "Except as provided in this subsection (a), subsection (b) and (c) below, and Section 6.3, upon termination of this Agreement pursuant to Section 6.1, neither Party shall have any further rights nor [*sic*] obligations under this Agreement. No damages shall be available for breach or failure under this Agreement." (Emphasis omitted.)

The rights available to Renaissance under the Agreement would be its own pre-emptive termination of negotiations under section 6.1(f). While Renaissance argues on appeal that it would have exercised its early termination rights had it known about Agency and City's bad faith, the allegations in the second amended complaint belie that claim. Specifically, the second amended complaint alleges that City representatives and Mr. Donohue began to be "less than cooperative" with Renaissance in July 2009. In addition, the second amended complaint states that in September 2009, the Agency's director told Renaissance that he believed they should focus negotiations on some parcels, specifically the 100 Block parcel and leave other parcels out, and that the City Manager reiterated this position in October 2009. The allegations demonstrate that Renaissance knew of the actions of Agency and City that it now alleges were bad faith, and it chose to continue to negotiate rather than terminate the negotiations pursuant to section 6.1(f). As such, Renaissance's argument that had it known about the bad faith

8

earlier, it would have exercised its termination right under the Agreement is without merit.

The second amended complaint fails to state claims for breach of contract breach of the covenant of good faith, estoppel and unjust enrichment. Moreover, the trial court did not abuse its discretion in sustaining the demurrer to these claims without leave to amend. Renaissance did not provide a proposed third amended complaint in its opposition to the demurrer. While Renaissance stated at oral argument before this court that if permitted to amend the complaint, Renaissance could add facts to demonstrate the reliance damages it incurred in creating a development plan, Renaissance did not make this representation to the trial court at the hearing on the demurrer. Indeed, when the trial court asked how Renaissance could amend the complaint to state a cause of action, Renaissance proffered only that it intended to "attach emails that reflect actions by [Mr. Donohue] outside the scope of his mayoral duties." These proposed additions would not cure the defects in the second amended complaint with regard to either the contract or the tort causes of action.

The Agreement provides Agency and City the right to terminate negotiations with Renaissance in its sole business judgment, and further, that there are no damages available for breach of the Agreement. There are no proposed amendments to the second amended complaint that can overcome these provisions.

***Tort Causes of Action***

The second amended complaint asserts four tort causes of action: negligence against Agency and City for the actions of Mr. Donohue, and interference with contract, interference with prospective economic advantage, and misrepresentation against Mr. Donohue.

9

### *Claims Against Mr. Donohue*

The sixth, seventh and eighth causes of action in the second amended complaint allege torts against Mr. Donohue, "individually to the extent and in the event it is determined that he acted without City authority, knowledge or consent and did so outside the scope of his authority as Mayor of the City of Salinas in performing the acts complained of herein."

While Renaissance couches these claims as arising out of Mr. Donohue's individual conduct, the allegations themselves describe actions that Mr. Donohue conducted in his role as Mayor. The allegations concern Mr. Donohue's participation in Agency and City's decisions regarding the parcels that were the subject of the Agreement. Specifically, the second amended complaint alleges that Mr. Donohue failed to disclose communications he had with the McEnery Group and Mr. Taylor about the parcels, and conspiring with City employees and City Council Members "to deprive [Renaissance] of its rights under the [Agreement] to the financial detriment of [Renaissance]."

Section 7.1 of the Agreement provides that any Project Agreements that may result from the negotiations between Renaissance and Agency and City would need the approval of the City Council, of which Mr. Donohue as Mayor, was a member. As such, any harm that Mr. Donohue could have caused to Renaissance's ability to form a Project Agreement with Agency and City was in his role as Mayor, not as an individual, private person.

Moreover, the Agreement specifically provides a contractual waiver of any right to recover against an Agency or City official or employee for "losses" alleged to have resulted from performance or breach of the Agreement. Specifically, section 7.17 of the Agreement states: "[n]o member, official or employee of the Agency or City shall be personally liable to the Developer in the event of any default or breach by the Agency

10

and/or City or for any amount which may become due to the Developer or on any obligations under the terms of this Agreement."

In addition to the waiver of liability set forth in the Agreement, Mr. Donohue is also immune from liability under the Government Claims Act (Gov. Code, § 820.2) and Civil Code Section 47, subdivisions (a) and (b).

Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  A public employee's decision to award or terminate a contract is discretionary. (See, e.g., *Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629 [immunity for county employees who decided to award a contract for jail services]; *Caldwell v. Montoya* (1995) 10 Cal.4th 972 [immunity for school board members who terminated a superintendant's employment contract].)

Here, Government Code section 820.2 provided Mr. Donohue immunity from liability for his role in Agency and City's discretionary decisions to discontinue negotiations with Renaissance.  Moreover, any allegation of malice or corruption on the part of Mr. Donohue does not negate his immunity under Government Code section 820.2.  "[P]ublic employees' tort immunity for legislative decision-making applies even when that decision-making is also alleged to involve the making of misrepresentations motivated by 'actual fraud, corruption or actual malice.'  (§ 822.2)." (*Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1337.)

Under Civil Code section 47, subdivisions (a) and (b), Mr. Donohue is immune from tort liability for statements made "[i]n the proper discharge of an official duty," and for statements made in an effort to influence a "legislative proceeding."  (Civ. Code, § 47, subds. (a) & (b).)  The statute applies to allegations of any tort that resulted from

11

communications, including interference with contract and prospective economic advantage. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215-216.)

The tort claims against Mr. Donohue are related to statements he made to Agency and City employees and others in an effort to convince them not to continue negotiations with Renaissance for development of the parcels encompassed in the Agreement. These statements were made not only in the discharge of his mayoral duties, but also in an effort to influence the outcome of a "legislative proceeding," specifically the decision to terminate or continue negotiations with Renaissance. Civil Code section 47, subdivisions (a) and (b) provide Mr. Donohue immunity for torts that arise from these statements.

The second amended complaint fails to state claims for interference with contract, interference with prospective economic advantage or misrepresentation. In addition, the trial court did not abuse its discretion in sustaining the demurrer to these claims without leave to amend. Government Code section 820.2 and Civil Code section 47, subdivisions (a) and (b) provided immunity to Mr. Donohue for statements he made related to Renaissance and the development of the parcels. In addition, the Agreement provides a contractual waiver of any right to recover against an Agency or City official or employee for "losses" alleged to have resulted from performance or breach of the Agreement. There are no proposed amendments to the second amended complaint that can cure the defects in the tort causes of action alleged against Mr. Donohue.

### *Claim Against Agency and City*

Renaissance alleges a negligence cause of action against Agency and City. Specifically, the second amended complaint alleges that City's officers and employees breached duties "to act reasonably in performing [City's] due diligence; to take reasonable steps to preclude breaches of the [Agreement]; . . . and disclose any actual or potential conflict of interest . . . ; to take reasonable steps to preclude said conflict from affecting said vote; and to have made a reasonable inquiry to determine if any

12

[Agreement] Parcels were not controlled or owned by the City and therefore not subject to development, prior to including said parcels in the [Agreement] and prior to [Renaissance's] expenditure of developer costs in reliance upon the parcels [*sic*] inclusion in the [Agreement]."

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries. [Citation.] Whether a duty of care exists is a question of law to be determined on a case-by-case basis." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62.)

Here, while Renaissance asserts City employees had duties associated with the Agreement, these duties are merely restatements of contract obligations. As stated in *Aas v. Superior Court* (2000) 24 Cal.4th 627, 643, superseded by statute on other grounds as stated in *Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1079, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations. Instead, ' "[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." ' " No such social policy is implicated here.

City employees have no independent duty to Renaissance to reasonably ensure due diligence, to investigate property ownership or to reasonably ensure no conflict of interest *absent* the contractual terms of the Agreement. Because Renaissance cannot establish that City owes it an independent duty of care, Renaissance cannot adequately state a negligence cause of action.

Renaissance additionally pleads negligence per se based on violations of Salinas Municipal Code Charter, Section 113, Government Code section 1090, and Penal Code Section 118. The Municipal Code and Government Code prohibit the involvement by city

13

officers or employees in contracts in which they have a financial interest. Penal Code section 118 criminalizes perjury. These statutes are designed to prevent the formation of contracts in which city employees have a financial harm, and to prevent lying under oath.

Renaissance alleges it was damaged because Agency and City terminated the Agreement at the end of the 10-month term, and failed to continue negotiations and create a contract for development of the parcels. This harm is not that which the statutes are designed to prevent, and as such, any violation of the statute cannot form a duty for the purpose of negligence per se.

The second amended complaint fails to state a cause of action for negligence against Agency and City. All of the allegations are related to Agency and City's actions arising from contractual obligations in the Agreement. In addition, the alleged statutory violations do not establish negligence per se. Renaissance has not, and cannot establish that Agency and City owe Renaissance a duty separate from the Agreement itself.

In conclusion, Renaissance has failed to allege facts sufficient to state causes of action in contract or tort against Agency and City, or Mr. Donohue. Moreover, there are no amendments that could cure these defects. The trial court correctly sustained the demurrer to the second amended complaint, and did not abuse its discretion in not granting Renaissance leave to amend.

## DISPOSITION

The judgment is affirmed.

14

_____
RUSHING, P.J.

WE CONCUR:

_____
ELIA, J.

_____
MÁRQUEZ, J.

*Salinas Renaissance Partners, LLC. v. Salinas Redevelopment Agency et al.*
**H039740**

15