Filed 12/13/21  Marentes v. Crusader Insurance CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VINCENT CASTILLO MARENTES et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CRUSADER INSURANCE COMPANY,<br><br>        Defendant and Respondent. | A158769<br><br>(City and County of San Francisco Super. Ct. No. CGC-16-556197) |

Plaintiff Vincent Marentes was involved in a multi-car accident while driving a tow truck for his employer.  During the accident, Plaintiff Liudmilla Bichegkueva suffered serious injuries and sued Marentes and his employer.  Defendant Crusader Insurance Company (Crusader) agreed to defend Marentes and his employer without any reservation of rights and retained counsel to represent them.  Marentes also had a personal automobile insurance policy with State Farm Mutual Automobile Insurance Company (State Farm) but State Farm initially refused to defend Marentes.  Bichegkueva offered to settle her claims against Marentes and his employer for Crusader's policy limits and a default judgment against Marentes in exchange for a covenant not to execute that judgment against Marentes and an assignment by Marentes of his bad faith claim against State Farm.  After an almost two hour discussion with Crusader's counsel about the offer and its

1

consequences, Marentes rejected Crusader's offer of independent counsel at Crusader's expense and accepted Bichegkueva's offer. Bichegkueva and Marentes (collectively, plaintiffs) then sued State Farm for bad faith but lost. Soon after, Plaintiffs sued Crusader but lost again as the trial court granted summary judgment, finding that Crusader did not act in bad faith to Marentes.

Plaintiffs now appeal from that summary judgment order. They primarily argue Crusader and its counsel had multiple undisclosed conflicts of interest with Marentes. They also claim Crusader breached its duty to settle Bichegkueva's claims for its policy limits without obtaining a release from liability for Marentes, and Crusader committed fraud by materially misrepresenting and concealing facts from Marentes to induce him to accept Bichegkueva's settlement offer. The record does not support plaintiffs' assertions, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Bichegkueva's Lawsuit

Crusader insured Extreme Towing, Inc. (Extreme Towing) and its employee, Marentes, under a $1 million automobile liability policy for accidents while Marentes drove Extreme Towing's tow truck. Marentes also had a personal State Farm automobile insurance policy limited to $30,000.00 per person and $60,000.00 per accident.

In 2013, while driving Extreme Towing's tow truck, Marentes was involved in a multi-vehicle accident that injured Bichegkueva and several other individuals. By September 2013, Crusader had paid $29,847.12 to settle the latter's claims, leaving $970,152.88 to settle Bichegkueva's claims. Bichegkueva filed a personal injury and property damages lawsuit against Extreme Towing and Marentes, which Crusader agreed to defend without

2

any reservation of rights. Crusader engaged outside counsel Aaron & Wilson, LLP (Aaron) to handle their defense.

**A. Settlement Negotiations**

In September 2014, Bichegkueva notified Crusader of her willingness "to accept the policy limits from" both Crusader and State Farm. She further stated that if State Farm denied Marentes any defense or indemnity under its policy, she was prepared to "take [a bad faith claim] assignment from [] Marentes against State Farm," enter a default judgment against Marentes, and agree to a covenant "to only execute [the judgment] against [] Marentes's State Farm Insurer." She reiterated this covenant and assignment offer on multiple occasions. In one instance, her counsel stated that he was personally "hopeful that [Marentes's and Extreme Towing's] insurers refuse to offer the policy limits" because he could then file a bad faith claim against an insurer for amounts beyond the policy limits.

Later in September, State Farm denied Marentes coverage on the ground the tow truck was not a covered vehicle under Marentes's personal policy. On October 3, Bichegkueva acknowledged that State Farm did not agree to defend Marentes or pay its policy limits. As a result, she again offered to settle her claims against Marentes for Crusader's policy limits plus an assignment of Marentes's bad faith claims against State Farm in exchange for a covenant not to execute on a prove-up default judgment against Marentes. This offer remained open until October 10.

On October 9, Aaron emailed Bichegkueva that " 'Crusader is inclined to offer the remaining limits of its policy, around $970,000 or so, but it wants ALL its insureds dismissed with prejudice . . . To [sic] do otherwise, seems like an abdication of its responsibilities to its insured, Vincent Marentes." In response, Bichegkueva's counsel reiterated her demand to give Marentes only

3

a covenant not to execute any default judgment, rather than a release, in exchange for an assignment of his potential bad faith claim against State Farm for its refusal to defend Marentes. In addition to explaining the process for pursuing such a claim, he attached a news article describing how he had recovered nearly $10 million from an insurer using a similar arrangement in a different case.

## B. Crusader's Discussions with Marentes About Bichegkueva's Settlement Offer

On October 10, Aaron met with Marentes for almost two hours to discuss Bichegkueva's "covenant and assignment" offer. Among the topics of discussion was the risk of offering Crusader's remaining policy limits in exchange for dismissing both Marentes and Extreme Towing from the lawsuit—an outcome that Crusader preferred. Specifically, Aaron explained to Marentes that such an offer would constitute a rejection of Bichegkueva's covenant and assignment offer. As a result, Bichegkueva could reject Crusader's counteroffer and instead proceed directly to trial, which could result in a judgment above the policy limits for which Marentes would be personally liable. Bichegkueva's settlement offer, in contrast, fully protected Extreme Towing but not Marentes because a judgment would only be entered against him. For that reason, Aaron offered Marentes independent counsel at Crusader's expense to advise him about his options. If Marentes wished to consult independent counsel or needed more time, Aaron intended to ask Bichegkueva to extend the deadline to accept her settlement offer. Finally, Aaron explained that Marentes was not obligated to accept the settlement offer, and that Crusader would continue to defend him in the lawsuit. That same day, Aaron provided Marentes a letter that explained his options,

4

including the option of having "this issue reviewed by independent counsel at the expense of" Crusader.

After the discussion, Marentes declined independent counsel and agreed to Bichegkueva's covenant and assignment offer. In December 2014, Bichegkueva, Marentes, and Extreme Towing signed a written settlement agreement that required Crusader to pay its full policy limits of $970,152.88 to Bichegkueva. Under the agreement, Bichegkueva released Extreme Towing from liability, while Marentes allowed a default judgment to be entered against him in exchange for Bichegkueva's agreement not to execute or enforce the judgment. Marentes also agreed not to contest Bichegkueva's damages or the judgment. Marentes assigned his potential bad faith claims to Bichegkueva, and Bichegkueva agreed that upon her counsel's determination that there were insufficient grounds to sue State Farm for bad faith, she would give Marentes a full release.

## C. The Default Judgment Against Marentes

In February 2015, Bichegkueva informed State Farm of her intention to proceed with a default judgment against Marentes if State Farm refused to defend him. Despite its prior position, State Farm unexpectedly agreed to defend Marentes subject to a reservation of rights. Bichegkueva filed a motion to enforce the judgment, and Aaron and Bichegkueva stipulated to the entry of a default judgment against Marentes. Despite the stipulation, Aaron appeared to join State Farm in filing an opposition to Bichegkueva's motion to enforce the judgment on behalf of Marentes—an apparent breach of the settlement agreement—without Marentes's knowledge. The trial court, however, struck the opposition, accepted the stipulation, and entered a default judgment against Marentes. In April 2016, a $2,597,352.30 default

5

prove-up judgment was entered against Marentes for Bichegkueva's injuries and damages from the 2013 auto collision.

## II. Plaintiffs' Litigation with State Farm

After the default judgment was entered, State Farm sued plaintiffs in federal court seeking a declaration that it had no duty to defend or indemnify Marentes against Bichegkueva's claims. It also sought reimbursement for legal fees incurred while opposing Bichegkueva's motion to enforce the judgment against Marentes. New counsel, rather than Crusader or Aaron, represented Marentes. The federal district court ultimately dismissed State Farm's case.

In November 2015, Bichegkueva and Marentes, through new counsel, sued State Farm for bad faith, and sought full payment of the default judgment against Marentes, as well as emotional distress and punitive damages for Marentes. But in December 2016, the trial court granted State Farm summary judgment because its policy excluded Extreme Towing's truck.

## III. Plaintiffs' Litigation Against Crusader

Shortly after Bichegkueva and Marentes lost their bad faith lawsuit against State Farm, Marentes assigned to Bichegkueva his right to sue Crusader for bad faith in exchange for Bichegkueva's covenant not to execute or enforce the default judgment against him. They agreed that if Bichegkueva did not receive money from a lawsuit against Crusader or any other insurer of the tow truck, she "will execute a stipulation to vacate the Judgment against Marentes." They also agreed to release each other from any claims that they breached the settlement agreement. Then, they sued Crusader for, among other things, bad faith, breach of contract, unfair business practices, and fraud/concealment.

The parties both submitted motions for summary judgment. In support of plaintiffs' motion, Marentes declared that he met with Aaron on October 10, 2014, but that Aaron did not explain Marentes's "rights to insurance beyond what is stated in" Aaron's letter or that Marentes had the right to demand that Crusader offer its policy limits to Bichegkueva to settle the case for both him and Extreme Towing. He then stated "I would not have agreed to or initialed the October 10, 2014 letter giving permission to Crusader to only settle the case for . . . Extreme Towing, Inc., if I had known that Crusader never demanded that Liudmilla Bichegkueva accept its policy limits for both Extreme Towing and me." He also stated that Aaron did not mention any conflicts of interest between him and Crusader or between him and Extreme Towing. Aaron, according to Marentes, did not explain why he was offering to appoint independent counsel on his behalf. Finally, Marentes noted that Aaron did not ask whether he or Extreme Towing would be willing to pay additional money to settle the case. Marentes did not, however, state that he had any additional money to settle the case.

The trial court granted Crusader's motion for summary judgment, and plaintiffs timely appealed.

## DISCUSSION

### I.    Standard of Review

Summary judgment is proper where there is "no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must demonstrate that the plaintiff " 'has not established, and cannot reasonably expect to establish' " the elements of the plaintiff's cause of action. (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.) "We review the trial court's decision de novo, liberally construing the

evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Id.* at pp. 1017–1018.)

## II.    Duty of Good Faith and Fair Dealing

Plaintiffs claim Crusader and Aaron, the counsel retained by Crusader to represent Marentes, failed to properly disclose their various conflicts of interest with Marentes, breached the duty to settle, failed to provide Marentes with an informed evaluation of Bichegkueva's settlement offer, and breached other professional responsibilities owed to Marentes—all amounting to bad faith. Thus, plaintiffs contend the trial court erred by granting summary judgment in favor of Crusader. We disagree.

Like all contracts, insurance policies have an implied covenant of good faith and fair dealing, requiring the parties to refrain from actions that would deprive them of the agreement's benefits. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 (*Wilson*).) For example, the implied covenant requires the insurance company "to make reasonable efforts to settle a third party's lawsuit against the insured." (*Howard v. American Nat. Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 524 (*Howard*).) Mere errors, bad judgment, or negligence does not, however, constitute bad faith. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 86; *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 819.) Instead, the insurer must engage in a " 'conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.' " (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 346 (*Chateau*).) Thus, the relevant inquiry in any bad faith claim against an insurer is whether the insurer's conduct was

8

unreasonable—a question of fact that "becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." (*Ibid.*) We evaluate the insurer's good or bad faith "in light of the totality of the circumstances surrounding its actions." (*Wilson, supra*, 42 Cal.4th at p. 723.)

## A. Conflict of Interest Arising From Bichegkueva's Settlement Offer

Bichegkueva's covenant and assignment offer required consideration directly from Marentes and beyond Crusader's policy limits. According to plaintiffs, this created a conflict of interest between Marentes and Crusader that warranted disclosure. Because Crusader failed to disclose this conflict of interest to Marentes, plaintiffs contend Crusader acted in bad faith. They, however, misstate Crusader's duties with respect to the settlement offer. In fact, Crusader appropriately discharged its duties under the policy.

A conflict of interest develops "when a settlement offer is made in excess of policy limits and the insured is willing and able to pay the excess." (*Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 877 (*Merritt*).) But in those circumstances, there is no duty to disclose the conflict. Rather, the insurer "must make a rational and knowledgeable assessment of the advisability of accepting or rejecting the settlement offer." (*Id.* at p. 874.) To that end, it must advise the insured about the pending settlement offer, identify the additional consideration beyond the policy limits that the third party is demanding, and determine whether the insured is willing to contribute this additional consideration. (*Id.* at p. 875.) That occurred here.

As plaintiffs point out, Aaron recognized that Bichegkueva's covenant and assignment offer created a conflict of interest between Crusader and Marentes. He then identified to Marentes the consideration beyond

9

Crusader's policy limits—Marentes's agreement to a stipulated judgment against him personally and his assignment to Bichegkueva of his right to pursue a bad faith claim against State Farm in exchange for a covenant from Bichegkueva not to execute the judgment against him—sought by the offer. Aaron explained to Marentes that the covenant would preclude Bichegkueva from collecting that judgment amount from him, thus offering Marentes financial protection. He further noted that the judgment could negatively affect Marentes's credit rating or prospective employment opportunities. Additionally, he described the potential consequences of rejecting Bichegkueva's offer, i.e., going to trial and Marentes's potential personal liability for a large judgment. Finally, he emphasized that it was Marentes's decision to accept or reject the offer, that Crusader could not enter the settlement without Marentes's "informed written consent," that Crusader would defend Marentes if he rejected the offer, and that Marentes could consult with independent counsel at Crusader's expense about the offer.

By communicating with Marentes in this manner, Crusader complied with its obligations to Marentes. (See *Heredia v. Farmers Ins. Exch.* (1991) 228 Cal.App.3d 1345, 1360 [failure to inform insured of settlement offer exceeding policy limits is bad faith]; *Merritt*, *supra*, 34 Cal.App.3d at p. 875.)

## B. Right to Independent Counsel

Citing Civil Code section 2860, plaintiffs contend Bichegkueva's settlement offer created an ethical conflict of interest between Crusader's counsel and Marentes, thus triggering Marentes's right to independent counsel. (Civ. Code, § 2860, subd. (a) [requiring insurer to provide insured with independent counsel unless insured, when informed of conflict, expressly waives in writing the right to independent counsel].) Plaintiffs complain Marentes did not knowingly waive his right to independent counsel

10

because Crusader's counsel failed to disclose its conflict of interest with Marentes and failed to explain why it offered him independent counsel.

As an initial matter, we question whether Crusader's counsel had an actual conflict of interest with Marentes that triggered his right to independent counsel. (See *Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1007–1008 [actual conflict of interest "precludes insurer-appointed defense counsel from presenting a quality defense for the insured" and requires appointment of independent counsel; potential conflicts do not].) While an actual conflict of interest exists "where the insurer pursues settlement in excess of policy limits *without the insured's consent* and leaving the insured exposed to claims by third parties," those circumstances do not appear to exist here. (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1101, italics added.) Marentes admitted he had a good understanding of the offer and consented to a settlement that exceeded Crusader's policy limits. Indeed, Aaron made clear that Marentes was not obligated to accept Bichegkueva's offer and that Crusader would defend Marentes without limitation if he rejected the offer. Thus, Marentes, not Aaron, controlled whether to accept Bichegkueva's settlement offer. Under these facts, Aaron's representation of Crusader did not appear to render less effective his representation of Marentes. (See *id.* at p. 1102.)

But resolving this issue is unnecessary. Even if Aaron's disclosure of any assumed conflict or explanation of the need for independent counsel was inadequate, plaintiffs do not demonstrate that his omissions proximately caused any damages. (See, e.g., *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1396 [insured entitled to compensatory damages for failure to appoint independent counsel]; *PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315 [insurance company is only

11

liable for damages that are proximately caused by a breach of the implied covenant of good faith and fair dealing].) This is because Aaron *did* offer Marentes independent counsel at Crusader's expense. Plaintiffs complain that this offer was illusory because Bichegkueva's offer expired the same day Aaron made the offer. But Marentes never claimed that he would have consulted with independent counsel if Aaron had made the required disclosure or explanation or if Aaron had given him more time to consider the offer. Nor did Marentes ever claim that he would have rejected the offer if he had consulted with independent counsel. In fact, Marentes admitted he did not feel it was necessary to get another attorney involved after discussing the issues with Aaron. Based on these undisputed facts, Marentes's speculation that independent counsel would have negotiated a settlement agreement that included a full release from liability cannot create a triable issue of fact.

## C. Duty to Settle

Plaintiffs insist Crusader acted in bad faith by not offering its policy limits to release both Marentes and Extreme Trucking from liability. They similarly fault Crusader for not offering Bichegkueva an additional $30,000.00 to be paid by either Marentes or Extreme Trucking plus its policy limits to settle her claims. Now, many years after the parties entered into the settlement agreement, Bichegkueva declares that she would have accepted these counteroffers if Crusader had presented them. For that reason, plaintiffs claim Crusader breached its duty to settle and is thus liable for the entire judgment entered against Marentes. (See *Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 724–725 (*Hamilton*) [allowing recovery of entire amount of judgment rendered against insured where insurer unreasonably refused to settle].)

There is little merit to plaintiffs' claim because Crusader did settle with Marentes's informed written consent.  (See *Pinto v. Farmers Ins. Exchange* (2021) 61 Cal.App.5th 676, 688 ["claim for bad faith based on the wrongful refusal to settle . . . requires proof the insurer unreasonably failed to accept an offer"].)  More importantly, an "insurer does not breach the duty to settle if it never had an opportunity to settle . . . . [T]he opportunity to settle is typically shown by proof that the injured party made a reasonable settlement offer within the policy limits and the insurer rejected it." (*Howard, supra,* 187 Cal.App.4th at p. 525.)

Here, Bichegkueva never offered to settle solely for Crusader's policy limits or for an additional $30,000.00 from Extreme Towing or Marentes, as plaintiffs contend.  The record establishes that Bichegkueva first offered to settle for payment of the policy limits by *both* Crusader *and* State Farm.  Her second offer was to settle for Crusader's policy limits, entry of a default judgment against Marentes with a covenant not to execute that judgment against him, and assignment of Marentes's bad faith claims against State Farm.  She continually repeated this second offer.  When Crusader's counsel expressed its inclination to offer Crusader's policy limits to release both Marentes and Extreme Towing, Bichegkueva's counsel reiterated this second offer.  He even sent Aaron a news article describing how he had successfully used a "similar arrangement" to recover nearly $10 million from an insurer who, like State Farm, had denied coverage.  Crusader thus appropriately explored the possibility of settling for its policy limits, but based on Bichegkueva's communications, reasonably believed it could not "feasibly be negotiated." (*Reid v. Mercury Ins. Co.* (2013) 220 Cal.App.4th 262, 278 [insurer may act in bad faith "when a claimant clearly conveys to the insurer

13

an interest in discussing settlement but the insurer ignores the opportunity to explore settlement possibilities to the insured's detriment"].)

Crusader's decision *not* to respond to Bichegkueva's settlement offers with a counteroffer to settle for its policy limits was also reasonable. At the time, Bichegkueva never manifested any willingness to settle under her now-stated terms. (Cf. *Graciano v. Mercury General Corp.* (2014) 231 Cal.App.4th 414, 427–428 ["An insured's claim for 'wrongful refusal to settle' cannot be based on his or her insurer's failure to *initiate* settlement overtures with the injured third party . . . but instead requires proof the third party made a reasonable offer to settle the claims against the insured for an amount within the policy limits"].) More significantly, Aaron had no assurances that if it made the counteroffer—which would have rejected Bichegkueva's offers— that Bichegkueva would have renewed any of her offers, particularly given her counsel's eagerness to sue an insurer for bad faith. (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1020 ["a counteroffer that deviates from the terms of an offer ordinarily operates as a rejection of the offer so as to terminate the offer immediately"].)

Bichegkueva's current self-serving and uncorroborated declaration that she would have released both Marentes and Extreme Towing if Crusader had simply offered its policy limits or if Marentes had paid $30,000.00 himself cannot establish that Crusader acted unreasonably. (See *Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 996, 1004 (*Taylor*) ["self-serving, uncorroborated evidence . . . does not meet their burden to demonstrate triable issues of material fact"]; *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*) [same].) As noted above, there was no evidence that Bichegkueva objectively manifested any such intent during the settlement negotiations.

14

Finally, Crusader's failure to offer to settle for $30,000 from Extreme Towing or Marentes cannot support a bad faith claim. There is no evidence that Extreme Towing or Marentes or the two of them together could or would have made such an offer. To the contrary, the only evidence in the record indicated that Extreme Towing lacked the financial wherewithal to offer any of its own funds to settle Bichegkueva's claims. Similarly, Marentes's declaration did not suggest, much less state, that he had any money of his own to settle the claims.

Under the totality of the circumstances, Crusader's efforts to settle were reasonable. (See *Howard, supra*, 187 Cal.App.4th at p. 524.) Because plaintiffs' claim that Crusader breached its duty to settle fails, their claim for the entire amount of the judgment against Marentes fails. (See *Hamilton, supra*, 27 Cal.4th at pp. 724–725.)

**D. Duty to Provide Marentes with an Informed Evaluation of the Settlement Offer**

We reject plaintiffs' claim, citing *Continental Casualty Co. v. United States Fidelity & Guaranty Co.* (N.D.Cal. 1981) 516 F.Supp. 384, that Crusader breached its duty to provide Marentes with an informed evaluation of Bichegkueva's settlement offer. (*Id.* at p. 389.) In that case, the insurer conceded that it did not engage in any negotiations after receiving the settlement offer, did not discuss the offer with the insured, and did not respond to the offer. Instead, the insurer insisted on going to trial, even though its payments department recommended paying the policy limits. (*Ibid.*) In contrast, Crusader "conduct[ed] good faith settlement negotiations sufficient to ascertain the most favorable terms available" and made the requisite evaluation of Bichegkueva's settlement demand. (*Ibid.*)

15

Aaron's almost two-hour long discussion with Marentes specifically addressed "whether to accept the settlement proposal on the table, which was an imperfect solution but which provided [] Marentes with financial protection, and . . . whether to hold out and press for a full release, which [] Bichegkueva might or might not be willing to give."  Aaron also identified the risks of requesting a release based solely on Crusader's policy limits, such as Bichegkueva rejecting the counteroffer—which would have extinguished her other offers—and taking the case to trial.  According to Aaron, "[w]e discussed my assessment that this risk appeared quite real based on my interactions with [Bichegkueva's counsel], who seemed dead set on pursuing a 'bad faith' claim against one or both insurers and who I believed might seize upon any excuse—such as a counter-offer—to refuse to settle within policy limits."

Aaron also explained to Marentes that "if [] Bichegkueva refused to settle and took the case to trial, [] Marentes faced the possibility of having a judgment in excess of the limits of the policy entered against him.  [Aaron] related that [Marentes's] insurance company would be obligated to pay the remaining limits on the policy but [Marentes] faced personal exposure for any amounts in excess of that figure.  The conversation included the shared understanding that Extreme Towing was not in a financial position to cover an excess judgment."

Although plaintiffs fault Aaron for his failure to provide Marentes with an informed assessment of Bichegkueva's personal injury claims and the potential damages she could recover at trial, this argument is meritless. Contrary to plaintiffs' claim that this was solely a liability case, Aaron's assessment, provided to Crusader, also noted that Bichegkueva's potential damages were problematic—she had a potential $720,000.00 wage loss claim

16

that "if proved, turns this into a policy limits case." He described Bichegkueva as "likeable," and concluded a jury would likely believe her wage loss claim. There is no reason to believe that this assessment would have affected Marentes's decision to accept Bichegkueva's offer. Indeed, Marentes made no such claim in his declaration. (*Lueter v. Cal.* (2002) 94 Cal.App.4th 1285, 1303 (*Lueter*).)

Plaintiffs' claim that Aaron was required to convey to Marentes his thoughts about the need for further discovery before Crusader paid its policy limits to Bichegkueva is equally meritless. Aaron had advised Crusader against agreeing to any settlement without additional discovery, such as two independent medical examinations of Bichegkueva. But Bichegkueva had threatened to withdraw her settlement offer for Crusader's and State Farm's policy limits if Crusader proceeded with the examinations. Under these circumstances, we cannot conclude that Aaron acted unreasonably or in bad faith by failing to provide Marentes with this information. (*Chateau*, *supra*, 90 Cal.App.4th at p. 346.) But even if he had, there is no evidence that this information would have affected Marentes's decision-making. (*Lueter*, *supra*, 94 Cal.App.4th at p. 1303.) Accordingly, Aaron's failure to provide Marentes with his evaluation of Bichegkueva's claims cannot support plaintiffs' bad faith claim.

E.     **Crusader's Duty to Treat Extreme Trucking and Marentes Equally**

Plaintiffs contend the settlement agreement favored Extreme Trucking over Marentes, and thus Crusader breached its duty of good faith and fair dealing owed to both insureds. (*Lehto v. Allstate Ins. Co.* (1994) 31 Cal.App.4th 60, 72 [insurer "cannot favor the interests of one insured over the other"].) Crusader, according to plaintiffs, paid its policy limits to obtain

a release from liability for Extreme Trucking while leaving Marentes without protection or insurance coverage. We disagree.

True, the settlement agreement allowed a default judgment to be entered against Marentes. But the covenant not to execute the judgment protected Marentes from any excess liability. As a result, Marentes has never incurred any out-of-pocket expenses in this case. Thus, Crusader did not bankroll Bichegkueva's case against Marentes. (See *State Farm Mutual Automobile Ins. Co. v. Crane* (1990) 217 Cal.App.3d 1127, 1136 [payment without obtaining release against insured would "bankroll" injured party's litigation against insured and could constitute bad faith toward insured].)

Marentes also expressly consented to Bichegkueva's settlement offer, including the lack of an individual release. (See *Ivy v. Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 661 [insurer must give insured the opportunity and information to decide "whether he would be satisfied with a covenant not to execute against him, and, if not, what steps he wanted to take to protect his interest"].) Moreover, the settlement agreement stated that Bichegkueva *would* release Marentes if her counsel determined there were insufficient grounds to sue State Farm for bad faith.

For these reasons, this case is distinguishable from the cases cited by plaintiffs. In each of those cases, the insurer acted without the consent of the insured and exposed that insured to the risk of greater liability. (See, e.g., *Schwartz v. State Farm Fire & Casualty Co.* (2001) 88 Cal.App.4th 1329, 1340 [summary adjudication improper where payment of full policy limits to one insured party may have impaired rights of coinsured "from receiving a fair share of benefits under the policy"]; *Shell Oil Co. v. Nat. Co.* (1996) 44 Cal.App.4th 1633, 1645 [insurer's payment of entire $1 million policy limits on behalf of only one coinsured, leaving the other insured to pay out-of-pocket

for settlement constituted bad faith]; *Palmer v. Financial Indemnity Co.* (1963) 215 Cal.App.2d 419, 431 [settlement covering one insured for $7,500 in exchange for convent not to execute that did not cover the second insured and without the second insured's knowledge left her abandoned, unprotected, and exposed to greater liability, sufficient for finding bad faith].)

Here, in contrast, Marentes consented to the settlement offer, and the settlement protected Marentes from any personal liability. Under these undisputed facts, we do not see how Crusader's actions can be construed as a conscious or deliberate act against Marentes's interests. (*Wilson, supra,* 42 Cal.4th at p. 726.)

## F.     The Rules of Professional Conduct

Plaintiffs claim Aaron breached the Rules of Professional Conduct while representing Marentes. Specifically, they claim Aaron's simultaneous representation of Extreme Towing and Marentes created an undisclosed conflict of interest to which Marentes did not provide informed written consent. (See *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283–284 (*Flatt*) [conflict may arise from a lawyer's simultaneous representation of clients with directly adverse interests]; Rules Prof. Conduct, rule 1.7(a)-(b).) They also contend Aaron's post-settlement conduct—including his apparent participation in State Farm's opposition to Bichegkueva's motion to enforce the default judgment on Marentes's behalf without his knowledge—breached his duty of loyalty to Marentes. (See *Flatt*, at p. 289 [attorney cannot "assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances"].) But even if Aaron breached his ethical duties,[1] plaintiffs

---

[1] The record indicates that during the October 10 discussion with Marentes, Aaron pointed out that Marentes *may* conclude "his interests were

have not demonstrated that these breaches proximately caused any damage to Marentes. (See *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1153 [requiring "proof of damages where the client seeks compensatory damages as a tort remedy for breach of fiduciary duty"].) Indeed, Marentes does not claim he would have rejected Bichegkueva's covenant and assignment offer had Crusader's counsel disclosed these or any other purported conflicts of interest.

There is also no merit to plaintiffs' claim that Aaron's failure to discuss Marentes's potential rights under Labor Code section 2802—which provides for employer indemnification of employees sued by third parties for conduct in the course and scope of employment—created a conflict of interest between Extreme Towing and Marentes, thus injuring Marentes. Indemnification was not an issue here. Bichegkueva recognized Marentes and Extreme Trucking lacked any assets, and there is no evidence that they had any assets to pay Bichegkueva. Bichegkueva never asked Marentes to personally pay her in exchange for releasing Marentes from liability. Instead, she only sought payment from Crusader and State Farm.

Aaron's purported filing of an opposition to Bichegkueva's motion to enforce the settlement without Marentes's knowledge also resulted in no harm to Marentes. The trial court struck the opposition, enforced the settlement agreement, and entered the default judgment against Marentes. Per the settlement agreement, Bichegkueva was still able to sue State Farm, and plaintiffs later released each other from any claims that they breached the settlement agreement. Thus, Marentes suffered no harm from Aaron's

---

not best served by settling while the interests of others were." He noted that Bichegkueva's covenant and assignment offer fully protected Extreme Towing but not Marentes.

opposition. Indeed, that opposition, if successful, would have voided the settlement agreement—the very outcome that plaintiffs claim should have occurred.

Likewise, Marentes has not demonstrated he suffered any damage from Crusader's failure to defend him against State Farm's lawsuit for declaratory relief. The court dismissed State Farm's complaint, and Marentes admitted that he did not pay any attorney fees or incur any additional expenses as a result of State Farm's actions.

Under the totality of the circumstances and the undisputed facts, there is no reasonable inference that Crusader's actions were unreasonable and made in bad faith.[2] (See *Chateau, supra*, 90 Cal.App.4th at p. 346.) In any event, even if Crusader's assumed errors were the result of bad faith rather than negligence or bad judgment, plaintiffs have not demonstrated that those errors harmed Marentes. (*McLaughlin v. Nat. Union Fire Ins. Co.* (1993) (1994) 23 Cal.App.4th 1132, 1162 ["Plaintiffs must show actual damage; proof of defendant's bad faith is not enough"].) Bichegkueva never attempted to collect any portion of the default judgment against Marentes, and Marentes has not paid anything as a result of entering into the settlement agreement with Bichegkueva. And Marentes admitted that he never will. Marentes also stated that he will not have to pay anyone if he does not recover anything in this lawsuit.

Accordingly, Aaron's purported breach of the Rules of Professional Conduct cannot support plaintiffs' bad faith claims.

---

[2] We do not address plaintiffs' claim Crusader acted in bad faith by failing to inform Marentes of Bichegkueva's Code of Civil Procedure section 998 demand for $1.25 million. Plaintiffs forfeited this argument on appeal by failing to raise it in the trial court. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.)

21

## II. Fraud and Fraudulent Concealment

We reject plaintiffs' claim that Crusader committed fraud by making various misrepresentations and omissions that wrongly induced Marentes to accept the settlement offer. Fraud requires a " 'misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damage.' " (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 649 (*Curcini*).) Fraudulent concealment requires the intentional concealment or suppression of a material fact that the defendant was under a duty to disclose and an intent to defraud. (*Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1127.) The plaintiff must have been unaware of this fact and " 'would not have acted as he did if he had known of the concealed or suppressed fact,' " and as a result, sustained damage. (*Ibid.*)

Plaintiffs identify several allegedly inaccurate statements made by Aaron. But they only contend one of those statements—that Crusader had offered to settle Bichegkueva's claims against Marentes for its policy limits— misled Marentes into accepting Bichegkueva's settlement offer. (See *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 668 (*Caro*) ["A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment' "].) That alleged misstatement cannot, however, support a claim of fraud.[3]

Plaintiffs cite two specific statements in Aaron's letter to Marentes that are allegedly false. First, they contend Aaron's representation that "we have asked plaintiff to accept the policy limits under the Crusader policy without the additional conditions outlined above, i.e., a stipulated judgment against []

---

[3] We do not discuss the additional alleged inaccuracies because plaintiffs do not present any argument or facts demonstrating that they induced Marentes to alter his position to his detriment.

Marentes," was false.  Second, they argue Aaron repeated this misrepresentation when he wrote that "Crusader will continue to offer plaintiff the amount of the remaining insurance, $970,152.88, in exchange for a dismissal with prejudice of BOTH Extreme Trucking, Inc. and [] Marentes."

But neither purported misrepresentation is material.  For example, the first statement was largely accurate.  As noted earlier, Crusader's counsel explored Bichegkueva's willingness to dismiss both Marentes and Extreme Towing in exchange for Crusader's policy limits.  Bichegkueva, however, ignored those overtures.  Instead, Bichegkueva's counsel repeatedly expressed his desire to sue State Farm for bad faith.

Likewise, the second statement, when read in context, simply explained Marentes's and Crusader's next steps if Marentes was "unwilling to accept [Bichekgueva's] proposed settlement demand, i.e., entering into a stipulated judgment, etc."  In that circumstance, "the case would simply continue, as before, with Crusader . . . funding the defense, and responsible for any judgment or settlement up to the limits of its policy."  Crusader would then continue to offer Bichegkueva its policy limits to settle her claims against Marentes.  Thus, the second statement was also largely accurate.

But even if these statements were inaccurate, plaintiffs cannot establish that they were material.  (*Caro*, *supra*, 18 Cal.App.4th at p. 668.) Based on the undisputed evidence available at the time of the settlement negotiations, Bichegkueva only manifested an intent to accept both Crusader's and State Farm's policy limits.  Her self-serving and uncorroborated declaration does not establish otherwise.  (See *Taylor*, *supra*, 67 Cal.App.5th at p. 1004; *King*, *supra*, 152 Cal.App.4th at p. 433.)  Thus, the alleged misstatements could not have induced Marentes to alter his position to his detriment.

Finally, there is no merit to Marentes's claim that Crusader misled him regarding its inability to obtain a release for him unless State Farm paid its $30,000.00 policy limits. That information was accurate. Bichegkueva only offered to settle for both Crusader's and State Farm's policy limits and never offered to settle for Crusader's policy limits. Instead, Bichegkueva made it clear that she would not settle for just Crusader's policy limits because she wanted the opportunity to sue State Farm for bad faith. In any event, Marentes cannot establish that he justifiably but detrimentally relied on this alleged misstatement. (See *Curcini*, *supra*, 164 Cal.App.4th at p. 649.) Summary judgment in favor of Crusader on this claim was therefore proper.

## III.   Unfair Competition Law Claim

Summary judgment was proper on plaintiffs' unfair competition law (UCL) claim. That claim is based solely on Crusader's alleged violations of the Unfair Insurance Practices Act (UIPA). Violations of the UIPA, by themselves, may not form the basis of a UCL claim. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 384.)

## IV.   Claim for Costs and Interest

Bichegkueva's argument that she is entitled to $18,722.50 in court-awarded costs and interest on her judgment pursuant to the supplementary payments provision in Crusader's insurance policy also fails. She claims Crusader's failure to pay that amount constitutes bad faith, a breach of contract, and a violation of Insurance Code section 11580.[4] The record does not support this claim.

Crusader's supplementary payments provision authorizes paying the insured "[u]p to $100,000 for all costs taxed against the 'insured' in any 'suit'

_____

[4] Insurance Code section 11580 sets forth coverage requirements for insurance policies.

24

against the 'insured' we defend," as well as "all interest on that part of any judgment to which this insurance applies" and accrues after entry of judgment. Bichegkueva, however, was not the insured. And under the settlement agreement, Bichegkueva agreed "to bear her own costs, expenses and attorneys' fees incurred in connection with the Subject Action and automobile Accident."

Bichegkueva is also not entitled to recover interest on the default judgment. Under the supplementary payments provision, Crusader's duty to pay interest "ends when we have paid, offered to pay or deposited in the court the part of the judgment to which this insurance applies and that is within our Limit of Insurance." Crusader discharged its obligations under this provision when it paid Bichegkueva its remaining policy limits of $970,152.88 on February 6, 2015. The default judgment was entered on April 13, 2016, more than a year later and well after Crusader had paid and exhausted its policy limits. The trial court's decision rejecting Bichegkueva's claim because plaintiffs offered "no evidence giving rise to a triable issue of material fact" was proper.

## V.    Punitive Damages

We do not address plaintiffs' argument that they are entitled to punitive damages because they make it for the first time in their reply brief. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.) But even assuming plaintiffs did not forfeit this argument, they have not demonstrated that Crusader's actions were sufficiently "reprehensible, fraudulent or in blatant violation of law or policy" to award punitive damages. (See *Food Pro Internat., Inc. v. Farmers Ins. Exchange* (2008) 169 Cal.App.4th 976, 994; Civ. Code, § 3294, subd. (a) [requiring clear and convincing evidence that

25

defendant acted with malice, oppression or fraud before awarding punitive damages].)

## DISPOSITION

The judgment is affirmed.

_____<br>Chou, J.*

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.


A158769

_____

* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.